**Marion M. WINSTEAD, Howard McDougall, R.V. Pulliam, Sr., Arthur H. Bunte, Jr., R. Jerry Cook, Robert C. Sansone, Robert J. Baker, and Harold Leu, Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund, Plaintiffs,**

v.

**J.C. PENNEY COMPANY, INC. VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION; Aetna Life Insurance Co., a Connecticut corporation; Woman's Hospital Foundation, a Louisiana corporation; and Children's Hospital, a Louisiana corporation, Defendants.**

No. 89 C 7788.

United States District Court, N.D. Illinois, E.D.

June 28, 1990.

James D. O'Connell, Margaret M. Fahrenbach, David S. Allen, Joan P. Simmons, Rosemont, Ill., for plaintiffs.

Manuel Sanchez, Lori S. Yokoyama, Sanchez and Daniels, Chicago, Ill., for J.C. Penney Co., J.C. Penney Health Bene. and Aetna Life Ins.

Oreft Dachniwsky, Oppenheimer, Wolff & Donnelly, Chicago, Ill., Mary H. Thompson, Watson, Blanche, Wilson & Posner, Baton Rouge, La., pro hac vice, for Woman's Hosp.

### MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiffs Marion M. Winstead, Howard McDougall, R.V. Pulliam, Sr., Arthur H. Bunte, Jr., R. Jerry Cook, Robert C. Sansone, Robert J. Baker and Harold D. Leu (the "Trustees") are the trustees and fiduciaries of the Central States, Southeast and Southwest Area Health and Welfare Fund ("CSS Fund"). The CSS Fund is a multiemployer trust fund and an employee wel-

fare benefit plan, governed by and subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (Amended Complaint, ¶¶ 2–3.)

Defendant J.C. Penney Company Inc. Voluntary Employees' Beneficiary Association ("J.C. Penney Plan") is a single employer trust fund and an employee health and welfare benefit plan, also governed by and subject to the provisions of ERISA. (Amended Complaint, ¶ 4.) Defendant Aetna Life Insurance Company, a Delaware corporation authorized to engage in business in Illinois, administers the J.C. Penney Plan. (Amended Complaint, ¶ 11.)

The Trustees filed their Complaint in this action after the J.C. Penney Plan denied benefits for certain medical expenses incurred by infant Brittani Louis at Woman's Hospital Foundation and Children's Hospital (collectively the "Hospitals") in Louisiana. The Hospitals are also named as defendants in plaintiffs' Amended Complaint.[1]

Defendants J.C. Penney Plan and Woman's Hospital have moved to dismiss the Amended Complaint on the ground that plaintiffs lack standing to assert the claims of the Amended Complaint. For the reasons set forth below, the motion to dismiss will be granted.

## BACKGROUND FACTS

It is well settled that in considering a motion to dismiss a court must take the well-pleaded factual allegations of the complaint as true, and dismissal is appropriate only if it is beyond doubt that the plaintiff can prove no set of facts consistent with the allegations of the complaint which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[2] The well-pleaded factual allegations set forth in the Amended Complaint depict the following scenario:

On or about December 5, 1988 Marlene Aikens gave birth to her daughter, Brittani Louis at Woman's Hospital Foundation in Baton Rouge, Louisiana. Brittani was born prematurely and was diagnosed as having respiratory disease syndrome, bronchopulmonary dysplasia and "stenoid dependency." (Amended Complaint, ¶ 10.) Her condition required and continues to require hospital and medical care and treatment. Brittani received treatment at Woman's Hospital Foundation and was later transferred to and received treatment at Children's Hospital in New Orleans, Louisiana. Brittani's medical expenses at Woman's Hospital Foundation total at least $139,882.98; her expenses at Children's Hospital total at least $131,922.59. (Amended Complaint, ¶ 22.)

Jeffrey Louis is Brittani's father. He and Brittani's mother have never been married, but lived together prior to and at the time of Brittani's birth. (Amended Complaint, ¶ 12.) Jeffrey Louis and his daughter Brittani were and are beneficiaries of the CSS Fund, pursuant to which they are entitled to certain medical and hospital benefits, subject to the terms and conditions contained in the CSS Fund's plan document. (Amended Complaint, ¶ 13.)

The Amended Complaint alleges that at all times relevant to this action, Ms. Aikens and Brittani "were and are beneficiaries entitled to receive, among other things, specified medical and hospital benefits for covered illnesses from the J.C. Penney Plan." (Amended Complaint, ¶ 11.) The Trustees contend that the J.C. Penney Plan and its administrator Aetna unreasonably refused to pay benefits on behalf of Britta-

---

**1.** Plaintiffs' memorandum in opposition to the motion to dismiss includes "J.C. Penney Company" and "J.C. Penney Health Benefits Program" as defendants in its caption. No such parties are mentioned anywhere in the Amended Complaint, the operative pleading for purposes of this motion to dismiss.

**2.** The court notes, however, that in reviewing the complaint on a motion to dismiss "it is well to keep in mind that only factual allegations will be considered, and that legal conclusions which may be alleged are not binding upon the court." *Reichenberger v. Pritchard et al.,* 660 F.2d 280, 282 (7th Cir.1981). Accordingly, CSS Plan is incorrect in its repeated assertions in its memorandum that the court must accept its characterization of this suit as one arising under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to enforce the terms of the CSS Fund.

ni. (Amended Complaint, ¶ 19.) Aetna, according to the allegations of the pleading, has asserted that Ms. Aikens failed to enroll Brittani in the J.C. Penney Plan within the eligibility period. Aetna also denied coverage under the late enrollment exception provided in the J.C. Penney Plan because of Ms. Aiken's failure to demonstrate her daughter's insurability. (Amended Complaint, ¶ 18.) Ms. Aikens appealed Aetna's determination (Amended Complaint, ¶ 19): defendants have asserted that this appeal was denied subsequent to the filing of the Trustees' complaint in this court. (J.C. Penney Mem. in Opposition, p. 3, n. 3.)[3]

The Trustees contend that, under the terms of the CSS Fund Plan Document, the J.C. Penney Plan is Brittani's primary insurance carrier. Accordingly, the Trustees assert, the CSS Fund is only the excess carrier. (Amended Complaint, ¶ 21.) "Because of the J.C. Penney Plan's failure to assume its responsibility to provide primary benefits to or on behalf of Brittani Louis," the pleading alleges, "the [CSS] Fund will be obligated to pay the hospital and medical benefits incurred on her behalf." (Amended Complaint, ¶ 20.)

The Trustees rely on sections 5.01, 5.02 and 5.03 of the CSS Fund's Plan Document to support their contention that the J.C. Penney Plan is the primary insurer of Brittani's medical expenses. These provisions of the Plan Document provide as follows:

> Section 5.01 PRIORITY OF COVERAGE WHERE COVERED INDIVIDUAL COVERED BY ANOTHER PLAN
>
> If the benefits of this Plan duplicate or overlap with benefits for hospital, surgical, dental, psychiatric, chiropractic or other medical treatment provided by an

Other Plan, such duplication or overlapping shall be avoided. In this regard, primary responsibility for providing benefits shall be determined in the following order.

> \*　　\*　　\*　　\*　　\*　　\*
>
> (d) If there is coverage for a Child by more than one (1) plan, the plan which covers the Spouse who has the earliest birthday (month and day) shall have primary responsibility, except that in the case of a child whose parents are separated or divorced, the following rules apply:
>
> (1) The benefits of the plan of the custodial parent shall be primary to the benefits of the non-custodial parent;
>
> (2) If the parents have joint custody, the plan which covers the Spouse who has the earliest birthday (month and day) shall have primary responsibility.
>
> Section 5.02 EFFECT OF PRIORITY RULES ON AMOUNT OF PAYMENTS UNDER THE PLAN
>
> Whenever this Plan is determined to have primary responsibility, the Covered Individual shall receive benefits without regard to coverage under the Other Plan. Whenever this Plan is determined not to have primary responsibility, this Plan shall pay, after the Other Plan has paid its maximum allowable benefits, any remaining covered charges up to the amount this Plan would have paid if the Plan had primary responsibility and without the payments from the Other Plan being taken into account in applying the specific benefit maximums indicated in this Plan.
>
> Section 5.03 RECOVERY OF PAYMENTS

---

**3.** The court assumes that the "appeal" referred to by the parties was administrative in nature.

The parties have apprised the court that several months after this lawsuit was filed, Brittani's parents brought suit on her behalf against both the CSS Fund and the J.C. Penney Plan in the state court of Louisiana. The Trustees have filed a motion to dismiss in that state court action for failure to exhaust plan administrative remedies and, in the alternative, to stay the case until after such exhaustion and resolution of this lawsuit. The Trustees have also indicated

that if the requested relief is not granted by the state court of Louisiana, they will move to transfer and consolidate that case with this one. (*See* Plaintiffs' Mem. in Opposition to Motion to Dismiss, p. 6, n. 1.)

The court notes that the parties have not indicated whether, should the pending motion to dismiss be granted in this case, they would seek removal of the Louisiana state action to federal court in Louisiana. Neither have the parties addressed the issue of whether *Colorado River* abstention would be appropriate in this case.

Whenever this Plan has made benefit payments which exceed the amount of benefits payable under the terms of this Plan or which an Other Plan was required to make under Section 5.01, the Fund shall have the right to recover the amount of such payments from any persons receiving such payments or from any Other Plans having primary responsibility for the payment of benefits.

(Amended Complaint, ¶ 15.) [4]

The Amended Complaint alleges, on information and belief, that Ms. Aikens "has sole legal custody of Brittani Louis." (Amended Complaint, ¶ 16.) The pleading further alleges that Ms. Aikens' birth date precedes that of Mr. Louis in the calendar year. (Amended Complaint, ¶ 17.) Pursuant to sections 5.01(d)(1) and 5.01(d)(2), the Trustees assert, the J.C. Penney Plan is therefore the primary benefit provider.

The Amended Complaint alleges that "Section 5.01 places primary responsibility for providing benefits regarding Brittani's illness upon the J.C. Penney Plan." (Amended Complaint, ¶ 21.) "Because the Fund is the excess carrier and the J.C. Penney Plan is the primary carrier, the Fund is bringing this action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to enforce the terms of the Fund's Plan Document." (Id.) [5] The Trustees seek the following:

(1) a declaration that, as between the J.C. Penney Plan and the Fund, the J.C. Penney Plan had and continues to have responsibility for providing primary medical and hospital benefits to or on behalf of Brittani Louis (Count I);

(2) an order compelling Aetna, as administrator of the J.C. Penney Plan, to pay benefits on behalf of Brittani Louis in accordance with the terms of the J.C. Penney Plan (Count I);

(3) an order enjoining the Woman's Hospital Foundation and Children's Hospital from pursuing any action against the CSS Fund to collect any amounts due until it is determined which benefit plan is the primary benefit source (Count II); and

(4) costs and reasonable attorneys' fees.

(Amended Complaint, pp. 8–9.)

## DISCUSSION

Section 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1), in relevant part, provides:

A civil action may be brought—

(1) by a participant or beneficiary—

\*     \*     \*     \*     \*     \*

(B) to recovery benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...

Section 502(a)(3) of ERISA provides that a civil action can be brought:

(3) by a participant, beneficiary, or fiduciary ... to enforce any provisions of this subchapter or the terms of the plan.

Plaintiffs characterize this lawsuit as one pursuant to § 502(a)(3) to enforce the terms of the CSS Fund Plan Document.

The court disagrees. The factual allegations of the Amended Complaint make clear that it is not the terms of the CSS Fund Plan Document which the Trustees would have this court enforce, but rather the terms of the J.C. Penney Plan. Essentially, plaintiffs' claim is that Aetna, as administrator of the J.C. Penney Plan, wrongfully denied coverage under the terms of that plan to Brittani Louis, thereby obliging the CSS Fund to act as primary insurer of Brittani's medical expenses. As the *ad damnum* clause of the Amended Complaint makes clear, the Trustees seek an order from this court compelling Aetna "to pay ... in accordance with the terms of the J.C. Penney Plan." (Amended Complaint, p. 8.) This lawsuit, no matter how plaintiffs characterize it, does not involve en-

---

**4.** The trustees have nowhere alleged that they have paid the medical expenses at issue and merely seek reimbursement of those amounts from the J.C. Penney Plan under section 5.03 of the Plan Document.

**5.** *But cf.* n. 1, *supra* (in deciding motion to dismiss court only accepts the factual allegations of the complaint, not the legal conclusions drawn by the plaintiffs therefrom).

forcement of the terms of section 5.01 of the CSS Fund Plan Document. Those terms do not take effect unless and until "there is coverage for a Child by more than one (1) plan...." (CSS Fund Plan Document, § 501(d).) The J.C. Penney Plan has denied coverage: the priority of coverage provisions of the CSS Fund Plan Document are simply irrelevant to the issue of the propriety of the J.C. Penney Plan's refusal to provide benefits.

The court has concluded that the Trustees have no standing under either ERISA or federal common law to challenge the propriety of the J.C. Penney Plan's denial of coverage.

In *Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147 (3d Cir.1985) the Third Circuit was presented with a claim by the trustees of a wife's ERISA plan against the ERISA fund which provided her husband's insurance benefits. The trustees' complaint in *Northeast Department* sought a declaration of the rights and obligations of the two funds regarding medical expenses incurred by the wife. The parties argued that federal subject matter jurisdiction arose under 29 U.S.C. § 1132(a)(3) because the suit could be characterized as one being brought by a trustee/fiduciary "to enforce" the terms of its plan against the husband's ERISA fund. 764 F.2d at 153. The Third Circuit disagreed, holding that this analysis, "although perhaps superficially appealing," was "based on an untenable legal fiction." *Id.* The court explained:

> The [husband's fund] is not a party to the [wife's] plan, and it has not violated or threatened to violate the terms of that plan. Thus, it cannot be said that the terms of the [wife's] plan are being "enforced" against the [husband's] Fund through this lawsuit. The persons who have the power and the duty to enforce the relevant portions of the [wife's] plan are the ILGWU Fund trustees themselves, and the [husband's] Fund is not preventing them from carrying out their obligations.

764 F.2d at 153–54. The Third Circuit also rejected an alternative argument presented by the parties in *Northeast Department* that § 1132(a)(3) provided a cause of action to the fiduciary of the wife's plan to compel enforcement of the terms of the husband's plan. The court explained:

> We believe that such an interpretation of § 1132(a)(3) would distort the plain language of this provision. Section 1132(a)(3) contemplates "fiduciaries" suing to enforce the terms of "the plan," meaning the terms of the plan regarding which they have a fiduciary duty.... Jurisdiction cannot be predicated on the mere coincidence that [the trustee] is a fiduciary of a benefit plan unrelated to the one which he seeks to enforce.

*Northeast Dept. ILGWU, supra,* 764 F.2d at 154.

The issue of what constitutes "enforcement" of a plan under § 1132(a)(3) was also addressed by the Eleventh Circuit in *Gulf Life Insurance Co. v. Arnold,* 809 F.2d 1520 (11th Cir.1987). In *Gulf Life* the Eleventh Circuit addressed the issue of whether an ERISA plan fiduciary could invoke ERISA's venue provision when seeking a declaratory judgment with regard to its liability for benefits claimed by a former employee. The fiduciary, like the Trustees in this action, argued that the declaratory judgment action arose pursuant to 29 U.S.C. § 1132(a)(3) because it was seeking "to enforce" the terms of the plan. The Eleventh Circuit disagreed:

> It also is clear to us that Gulf Life's suit does not seek "to enforce" the subchapter or the terms of the plan. "The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined the right to enter federal court was necessary to further the statute's purpose." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 21 [103 S.Ct. 2841, 2852, 77 L.Ed.2d 420] (1983). Gulf Life's declaratory judgment action simply is unnecessary to further the statute's purpose. The purpose essential to section 1132(a)(3)(B) is to enforce the terms of the plan or ERISA; all Gulf Life need do

to enforce the terms of the plan, assuming it contends the claim for benefits is invalid, is deny payment. Moreover, an action "to enforce" means an action to compel someone to do something or not to do something, such as make contributions, that ERISA or the plan requires be done or not done.... Gulf Life's action is defensive in nature; the company simply wishes to avoid making payment that Arnold claims is due. Seeking a declaration of its liability does not "enforce" the plan.

*Gulf Life, supra,* 809 F.2d at 1523–24 (certain citations omitted). The court summarized:

Section 1132 is essentially a standing provision: it sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue. These standing provisions must be construed narrowly; civil actions under ERISA are limited only to those parties and actions Congress specifically enumerated in section 1132.

*Id.* at 1524.

If, as the Eleventh Circuit has explained, a fiduciary lacks standing under § 1132(a)(3) to secure a declaration of liability with regard to participants in its own plan, this court has no difficulty finding that a fiduciary lacks standing to secure a declaration of another plan's liability, particularly when the coverage terms of only the other plan are at issue.

This court's narrow reading of the scope of § 1132(a)(3) is also supported by *Giardono v. Jones,* 867 F.2d 409 (7th Cir.1989), a recent case in which the Seventh Circuit examined whether the grant of subject matter jurisdiction in § 1132(e)(1) of ERISA is exclusive to the parties enumerated therein.[6] Relying on the Supreme Court's opinions in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420

(1983) and *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Seventh Circuit noted that the Supreme Court has "made it clear that the statutory scheme of ERISA does not lend itself to judicial expansion of available remedies." *Giardono,* 867 F.2d at 413. Accordingly, the Seventh Circuit held that:

[T]he subject matter jurisdiction in § 1132(e)(1) is exclusive. The courts are without the power to expand their jurisdiction under ERISA in order to imply a cause of action for non-enumerated parties.

*Id.*

In the alternative, the Trustees argue that this suit arises under federal common law and that 28 U.S.C. § 1331 provides them the remedy they seek. *Cf. Northeast Department ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, supra* 154–159 and 164–166 (two members of panel finding, for different reasons, that 28 U.S.C. § 1331 conferred jurisdiction over suit by trustees of one benefit fund against another fund). The court disagrees. As Judge Mills observed while determining that the district court lacked subject matter jurisdiction under ERISA to consider an employer's subrogation right under an ERISA-governed plan, "the Supreme Court's decision in *Franchise Tax Board,* 463 U.S. at 26–27, 103 S.Ct. at 2855–56, as well as ERISA's exact wording, casts doubt on the applicability of § 1131." *In re Estate of Sheppard,* 658 F.Supp. 729, 734 n. 10 (C.D.Ill. 1987). This court has concluded that Congress' careful delineation of the types of statutory remedies available to fiduciaries of ERISA funds precludes this court from creating a cause of action out of the "notoriously indistinct" boundaries of "arising under" jurisdiction. *Connors v. Amax Coal Co., Inc.,* 858 F.2d 1226, 1230 (7th Cir.1988).[7]

---

**6.** 29 U.S.C. § 1132(e)(1) provides:
... [T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary or fiduciary....

**7.** The Seventh Circuit's opinion in *Amax Coal, supra,* lends some support to this court's conclusion that § 1331 jurisdiction does not provide

CONCLUSION

In conclusion, this court lacks subject matter jurisdiction over the allegations of the Amended Complaint and plaintiffs lack the requisite standing to assert the claims presented therein. Accordingly, the motion to dismiss is GRANTED and this case will be dismissed in its entirety.

the Trustees with the cause of action asserted in the Amended Complaint. In that case the Seventh Circuit held that neither ERISA nor the "purported federal common law of employee benefit plans" provided a basis for § 1331 jurisdiction when the Black Lung Benefits Act provided an administrative process to be followed prior to an enforcement action. The court noted the split among the judges of the Third Circuit in *Northeast Department, supra,* on the § 1331 jurisdiction issue and chastised counsel for the plaintiffs (trustees of a union benefit plan) for citing *Northeast Department* for the proposition that "there is a broad federal common law of pension benefits plans which provides a basis for section 1331 jurisdiction...." 858 F.2d at 1230, n. 5. Finally, the court noted that "[t]he mere relevance of ERISA and federal common law to the trustees' claims does not establish that these claims 'arise under' those bodies of law." 858 F.2d at 1230, citing *Franchise Tax Board, supra,* 463 U.S. at 10, 103 S.Ct. at 2846.