**Joseph P. CONNORS, Sr., et al. Plaintiffs–Appellants,**

v.

**AMAX COAL CO., INC., Defendant–Appellee.**

No. 88–1120.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1988.
Decided Sept. 21, 1988.

Charles G. Starrs, UMWA Health and Retirement Funds, Washington, D.C., for plaintiffs-appellants.

James F. Bleeke, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiffs, trustees of the United Mine Workers of America 1950 Benefit Plan and Trust (the "Plan"), claim to have paid out over $27,000 for black lung related medical expenses of miners who worked for Amax Coal Company, Inc. ("Amax"). The trustees seek reimbursement from Amax alleg-

ing that the company is liable for these expenses under the Black Lung Benefits Act (the "BLBA"), 30 U.S.C. §§ 901–945 (1982 & Supp. IV 1986). Amax has refused to pay until the trustees establish that these expenses qualify as black lung related medical services that the company is obligated to reimburse under the applicable regulations. *See* 20 C.F.R. § 725.701(a)–(c) (1988).

The trustees brought suit in federal district court as subrogees to the miners' rights against Amax, alleging that the company had been unjustly enriched by the Plan's payment of the black lung related expenses of the company's former employees. The district court granted Amax's motion to dismiss for lack of subject matter jurisdiction, ruling that under the BLBA the trustees could only sue in district court to enforce a final compensation order obtained through prescribed procedures and that the trustees' attempted invocation of the Employee Retirement and Income Security Act ("ERISA") and federal common law was insufficient to confer subject matter jurisdiction on the district court. The trustees then brought this appeal. We affirm.

## I.

■ Section 422 of the BLBA, 30 U.S.C. § 932(a) (1982 & Supp. IV 1986), incorporates the claims procedures set forth in the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C. §§ 918–928 (1982 & Supp. IV 1986). The procedures outlined in the LHWCA and in the procedural regulations for the black lung benefits program strictly limit claimants' access to federal district court. District courts decide disputes over black lung benefits awards only when a claimant sues to enforce "a compensation order making an award, that has become final"—that is, an administrative award that has not been

appealed within the required time or with respect to which all appeals have been exhausted.[1] Claims for compensation for black lung related medical expenses are subject to three levels of administrative review: an initial determination by the Deputy Commissioner of the Division of Coal Mine Workers' Compensation, Office of Workers Compensation Programs, 20 C.F.R. §§ 725.410–.420 (1988); a formal hearing, if requested, before an Administrative Law Judge, *id.* §§ 725.-421, .456–.479; and an appeal, if requested, to the Benefits Review Board, *id.* § 725.481 & Part 802. Section 21(c) of the LHWCA, 33 U.S.C. § 921(d) (1982), requires exhaustion of this three-step procedure as a prerequisite to judicial review in the courts of appeals.[2]

The trustees contend, and Amax does not dispute, that the Deputy Commissioner has found Amax liable for the black lung related medical expenses of the miners named in this action and that these determinations have become final. However, Amax does dispute the trustees' contention that the company can be sued in federal district court and forced to pay particular medical bills not yet certified under 20 C.F.R. Part 725 as having been incurred in the treatment of black lung disease. Amax points out that section 725.707 of the regulations establishes an administrative process for resolving disputes over whether particular expenses were incurred in the treatment of black lung disease. Section 725.707, like the mechanism for resolving the threshold questions of miner eligibility and company liability, provides for initial action by the Deputy Commissioner to be followed by ALJ review, Benefit Review Board review and appeal to the courts of appeals. 20 C.F.R. § 725.481, .707 & Part 802 (1988).

■ The district court concluded, and we agree, that a claimant, whether a miner or a subrogee to a miner, does not possess a

1. When a responsible party defaults on payments due under a final award, a beneficiary may also file suit in district court under 33 U.S.C. section 918.

2. The 1972 amendments to the LHWCA, Pub.L. No. 92–576, § 15(a), 86 Stat. 1261, 1262 (codi-

fied as further amended at 33 U.S.C. § 921(b) (1982 & Supp. IV 1986)), replaced provisions allowing for injunctive actions in district court to set aside compensation orders with provisions authorizing appeals of benefits determinations to a Benefits Review Board.

"compensation order making an award, that has become final"—the ticket to admission to district court under section 921(d)—until that party obtains a final administrative determination resolving any dispute as to whether particular expenses are covered expenses. *See Connors v. Amax Coal Co.*, 674 F.Supp. 22, 23–24 (S.D.Ind.1987); *see also Lute v. Split Vein Coal Co.*, 11 Black Lung Rptr. (MB) 1–82 (Benefit Rev.Bd.1987) (Benefit Review Board holds that due process challenge to liability determination is premature prior to miner's demand for reimbursement and administrative assessment of particular expenses under section 725.707). The trustees contend that section 725.707 should apply only to individual employers' claims because disputes arising under this section receive expedited processing by ALJs. Extending this priority treatment to subrogees, according to the trustees, would delay the processing of more pressing claims by individual miners. The trustees concede that the Department of Labor may "perhaps" possess greater expertise in determining which medical expenses qualify for reimbursement under the regulations, but they suggest that the district courts can reduce their comparative disadvantage by relying on the Department's published guidelines for classifying medical expenses.

The trustees advocate, in effect, that we construe the jurisdiction of agency adjudicators narrowly to enable district courts to alleviate the agency's work load, notwithstanding that the determinations at issue involve the application of detailed administrative guidelines in a highly technical area. This approach is unsupported by common sense, the language of section 725.707 or, insofar as we have been able to determine,

by any judicial or administrative construction of the black lung benefits regulations. Even the trustees' professed concern about delaying individual miners' claims is unpersuasive.[3] We therefore affirm the district court's conclusion that subrogees to the rights of miners against responsible operators under the BLBA may not sue in district court to resolve disputes over whether particular medical bills were incurred in the treatment of black lung disease.

## II.

■ The trustees also argue that the district court had subject matter jurisdiction because the complaint states claims "arising under" federal law within the meaning of 28 U.S.C. section 1331. In particular, the trustees assert that the complaint sets forth claims arising under ERISA and federal common law. The trustees are not entirely clear about the sense in which their claims arise under ERISA, but they cite provisions requiring fiduciaries to administer funds in accordance with plan documents and prohibiting any use of fund assets that would "inure to the benefit of an employer." *See* 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(D) (1982).[4] In addition, they maintain that even if ERISA itself will not serve, there is a federal common law of employee benefit plans supplementing ERISA, which provides a basis for section 1331 jurisdiction.

■ We find the trustees' arguments unconvincing. To establish a cause of action in district court under section 1331 the trustees must show first that their action against Amax "arises under" ERISA or federal common law and second that section 1331 jurisdiction is not preempted by a

---

3. Deputy Commissioners can alleviate any hardship that a flood of cases by subrogees might cause by "order[ing] the payment of medical benefits prior to final adjudication" or "tak[ing] whatever [other] action may be necessary to protect the health of a totally disabled miner." 20 C.F.R. § 725.707(b), (c) (1988).

4. The trustees also allude (in their appellate briefs, though not in their complaint) to the specific grant of subject matter jurisdiction contained in section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (1982). Section 502(a)(3) autho-

rizes suits by fiduciaries "to obtain appropriate equitable relief to redress violations or enforce provisions of ERISA or terms of the Plan." Even if this jurisdictional claim had been included in the Trustees' complaint, it could not succeed. Section 502(a)(3) does not apply to suits by fiduciaries to recover money that they paid to outside entities in violation of the terms of ERISA or the plan. *See Northeast Dep't ILGWU v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 153–54 (3d Cir.1985).

more specific statutory provision conferring exclusive jurisdiction elsewhere. Although the boundaries of "arising under" jurisdiction are notoriously indistinct, *see, e.g., Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983); *Stone & Webster Eng. Corp. v. Ilsley,* 690 F.2d 323, 328 (2d Cir.1982), *aff'd sub nom. Arcudi v. Stone & Webster Eng. Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), it seems clear that neither ERISA nor the purported federal common law of employee benefit plans [5] provides a basis for section 1331 jurisdiction in this case. In *Connors v. Tremont Mining Co.,* 835 F.2d 1028 (3d Cir.1987), which rejected arguments similar to those raised here, the Third Circuit observed that

> the right of the trustees to recover from the operator[ ] is not dependent simply upon an interpretation of the [ERISA-regulated] Plan. Having only rights of subrogation, the trustees can recover only if the operators are liable to individual beneficiaries under the BLBA, and only if a fund award has been previously promulgated.

*Id.* at 1029. ERISA, and any interstitial principles of federal common law that supplement ERISA may affect the fund's status as subrogee, but this would appear to be a subsidiary issue that the trustees have raised at this juncture only by anticipating Amax's defenses. The mere relevance of ERISA and federal common law to the trustees' claims does not establish that these claims "arise under" those bodies of law. *See Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. at 2846; *see also Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936) ("A suit does not arise under a law renouncing a defense, though the result of the renunciation is an extension of the area of legislative power which will cause the suitor to prevail.").

■ Even if the trustees' claims did arise under ERISA or federal common law, section 1331 would not supersede the provisions of LHWCA, as incorporated by the BLBA, that call for exclusive jurisdiction in the courts of appeals over disputes concerning specific medical expenses. *Tremont Mining* held that "where black lung benefits are at issue, jurisdiction is not available under section 1331 because it was 'supplanted by the provisions for exclusive Court of Appeals review.'" 835 F.2d at 1030 (quoting *Compensation Dep't of Dist. Five, United Mine Workers v. Marshall,* 667 F.2d 336, 339 n. 7 (3d Cir.1981)); *accord Connors v. Allied Chem. Corp.,* 676 F.Supp. 114, 117 (S.D.W.Va.1987). The Trustees distinguish *Compensation Department,* which involved only BLBA issues, from *Tremont Mining,* which, like the present case, involved ERISA and federal common law issues as well, and argue that the latter was wrongly decided. According to the trustees, *Compensation Department* properly held that the BLBA's

---

5. *Compare Franchise Tax Bd.,* 463 U.S. at 24–25 & n. 28, 103 S.Ct. at 2854–55 & n. 28 (denying section 1331 jurisdiction over declaratory judgment action by state tax board despite claim that suit arose under federal common law of pension benefit plans) *with Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983) (section 1331 jurisdiction available in companies' action to enjoin enforcement of state regulation alleged to have been preempted by ERISA). *See generally Northeast Dep't,* 764 F.2d at 154–59 (Becker, J.) (discussing implications of *Franchise Tax Board* and *Shaw* for argument that section 1331 jurisdiction may be predicated on federal common law of pension benefit plans); *id.* at 164–66 (Sloviter, J.) (differing view of same cases).

The trustees repeatedly cite to part II.B. of the lead opinion in *Northeast Department* as support for their contention that there is a broad federal common law of pension benefit plans which provides a basis for section 1331 jurisdiction in this case. *See* Brief for Appellees at 7, 9–10. One quotation from part II.B. of the lead opinion is introduced with the phrase "[a]s one court held in analogous circumstances." The trustees fail to mention, despite conspicuous caveats in the *Northeast Department* opinions, that only Judge Becker found that the case arose under a broad federal common law of employee benefit plans. *See Northeast Dep't,* 764 F.2d at 147 n. 1 ("part IIB reflects the views only of Judge Becker"); *id.* at 151 ("[p]art IIB reflects Judge Becker's theory"); *id.* at 164 (Sloviter, J.) ("I do not join in Part II.B. which represents only Judge Becker's view."). We hope that counsel for appellants will exercise greater care in the future in their representations of legal authority.

incorporation of the LHWCA's restrictions on district court jurisdiction barred any BLBA claims from serving as a basis for section 1331 jurisdiction. But they contend that *Tremont Mining* improperly extended the preclusive effect of the LHWCA jurisdictional scheme to suits involving both the BLBA and other sources of federal law.

■ This distinction does not change the result. Generally, when jurisdiction to review administrative determinations is vested in the courts of appeals these specific, exclusive jurisdiction provisions preempt district court jurisdiction over related issues under other statutes. "The policy behind having a special review procedure in the first place ... disfavors bifurcating jurisdiction over various substantive grounds between district court and the courts of appeals." *City of Rochester v. Bond,* 603 F.2d 927, 936 (D.C.Cir.1979); *see, e.g., United Transp. Union v. Norfolk & Western Ry. Co.,* 822 F.2d 1114, 1120–21 (D.C.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988); *Environmental Defense Fund, Inc. v. EPA,* 485 F.2d 780, 783 (D.C.Cir.1973); *see also General Fin. Corp. v. FTC,* 700 F.2d 366, 368 (7th Cir.1983) (litigant "may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under [section] 1331 or 1337; the specific statutory method, if adequate, is exclusive"); *Assure Competitive Transp., Inc. v. United States,* 629 F.2d 467, 471 (7th Cir.1980) ("a special statute vesting jurisdiction in a particular court cuts off the jurisdiction other courts might otherwise have under a more general statute").

The trustees contend that recovery from Amax could depend on the terms of the 1950 Plan or on the scope of the trustees' authority under ERISA, questions on which the special expertise of the Deputy Commissioner, ALJs and Benefits Review Board members has little bearing. But the cases do not support ignoring statutory provisions that call for exclusive review simply to avoid presenting administrative decisionmakers with unfamiliar legal issues. In *Environmental Defense Fund,* for example, the plaintiff was precluded from going into district court to challenge the EPA's compliance with the National Environmental Policy Act. A district court suit would have circumvented provisions of the Federal Insecticide, Fungicide and Rodenticide Act which called for appellate court review of administrative decisions made under that Act. 485 F.2d at 783. The focus is not on the agency's familiarity with particular legal questions, but on its ability to produce the kind of record that will permit adequate appellate review of the questions. *See, e.g., City of Rochester,* 603 F.2d at 936–37; *Environmental Defense Fund,* 485 F.2d at 783. Although we are handicapped somewhat by the vague terms in which the trustees describe their reliance on ERISA and federal common law, we are unaware of any reason why administrative procedures cannot produce an adequate record upon which this court can resolve any ERISA or federal common law issues.

To be sure, the reach of a given exclusive jurisdiction provision is sometimes open to dispute. The circuit courts have split, for instance, on whether the exclusive jurisdiction of the Civil Aeronautics Board over airline mergers bars district court actions by employees claiming that a merger has violated employment rights. *Compare, e.g., Carey v. O'Donnell,* 506 F.2d 107, 110 (D.C.Cir.1974), *cert. denied,* 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975) *with Clayton v. Republic Airlines, Inc.,* 716 F.2d 729, 731–32 (9th Cir.1983). In the present context, however, the conclusion that the exclusive review provisions of the LHWCA would preempt district court jurisdiction even if the trustees claim for reimbursement could be said to have arisen under ERISA and federal common law is reinforced by section 514(d) of ERISA, 29 U.S.C. § 1144(d) (1982). Section 514(d) provides that nothing in ERISA "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." The trustees address themselves to a narrow, redacted version of this broad provision, arguing that district court jurisdiction would not "invali-

date" the substance of the BLBA. We see no reason, however, why section 514(d) should not apply to the impairment of statutory provisions and regulations governing review procedures. Section 921(d) of the LHWCA and the procedural regulations implementing the black lung benefits program call for administrative determinations with respect to the coverage of particular medical expenses, followed by judicial review in the courts of appeals. Under the BLBA scheme, final compensation orders come before the district courts only when a claimant seeks to enforce an order that has become final. Using ERISA, or federal common law supplementary to ERISA, as a means of circumventing this restriction would certainly alter, amend, modify or supersede section 921(d) of the LHWCA and the regulations governing the black lung program.[6]

### III.

The judgment of the district court is AFFIRMED.

---

**6.** In a fall-back position that seems at odds with their professed concerns about delay in the resolution of their claims, the trustees argue that even if the Labor Department has exclusive jurisdiction to determine whether particular medical bills are black lung related, the district court should have accepted jurisdiction under section 1331 and stayed proceedings in the district court while the Department of Labor exercised its primary jurisdiction over the classification of medical bills. The judge-made doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956); *see United States v. Elrod*, 627 F.2d 813, 817 (7th Cir.1980). *See generally*, 4 K. Davis, *Administrative Law Treatise* ch. 22 (1972).

If this case presented questions arising under ERISA or federal common law and if the Department of Labor were incapable of producing a record that would allow an appellate court to resolve these issues, it might have been appro-

priate for the district court to retain jurisdiction while the Department of Labor reviewed the contested bills. There is no indication, however, that the Department of Labor will be unable to produce the factual record needed to resolve any conceivable ERISA and federal common law issues. Thus, even if the ERISA and common law claims were within the scope of section 1331, resort to the doctrine of primary jurisdiction would only have delayed final resolution of the Trustees' claims. Amax would have been entitled to exhaust its appeals on the classification of particular medical bills, including review in the court of appeals, before the district court took up any remaining legal issues. *See Pennsylvania R.R. Co. v. United States*, 363 U.S. 202, 205–06, 80 S.Ct. 1131, 1133, 4 L.Ed.2d 1165 (1960).

