913 F.2d 1544
 17 Fed.R.Serv.3d 1412, 12 Employee Benefits Ca 2536
 BLUE CROSS AND BLUE SHIELD OF ALABAMA; South Central Bell
Medical Expense Plan, South Central Bell Telephone
Company, Plaintiffs-Appellees,
v.
Lawrence J. WEITZ, Defendant-Appellant,
Norma Redinger, in her capacity as Executrix of the Estate
of Kathleen M. DePierri and in her individual
capacity, Defendant.
 No. 89-7004.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 10, 1990.
 
 1
 Richard Sterling Maxwell, Nashville, Tenn., for defendant-appellant.
 
 
 2
 Lawrence B. Clark, Duncan B. Blair, Timothy A. Palmer, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for plaintiffs-appellees.
 
 
 3
 Appeal from the United States District Court for the Northern District of Alabama.
 
 
 4
 Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM*, Senior District Judge.
 
 PECKHAM, Senior District Judge:
 
 5
 Defendant Dr. Lawrence J. Weitz appeals from a grant of summary judgment in plaintiffs' favor in an action to recover payments improperly made by the South Central Bell Medical Expense Plan to Dr. Weitz. As a threshold matter, Weitz contends that the district court lacked subject matter jurisdiction pursuant to section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1132.[1] Weitz further contends that even if ERISA jurisdiction were proper, principles of equitable restitution, specifically the doctrine of "change of position," preclude summary judgment in the plaintiffs' favor. Finally, Weitz asserts that the district court erred in granting summary judgment because some portion of the claims are barred by the statute of limitations.
 
 I. BACKGROUND
 
 6
 A. Facts.
 
 
 7
 South Central Bell sponsors the South Central Bell Medical Expense Plan ("Medical Expense Plan") for the benefit of South Central Bell's eligible employees. The Medical Expense Plan is self-insured, and is an employee welfare benefit plan as defined for purposes of ERISA, 29 U.S.C. Sec. 1001 et seq. Blue Cross and Blue Shield of Alabama ("Blue Cross") serves as the claims administrator under the Medical Expense Plan and, with respect to its activities in determining claim eligibility, making payments, and hearing administrative appeals from claim denials, acts as a fiduciary within the meaning of ERISA.
 
 
 8
 The Medical Expense Plan provides for outpatient mental care benefits equal to 50 percent of an eligible employee's covered charges, provided that the mental care is rendered by a "physician" as defined in the Medical Expense Plan.[2] Defendant-appellant Lawrence J. Weitz is a licensed clinical psychologist in the State of Tennessee, thus satisfying the Medical Expense Plan's definition of "physician." From 1981 to 1986, Weitz or someone on his behalf submitted 338 claims to Blue Cross to receive payment for psychotherapy and other mental care services rendered to eligible South Central Bell employees. For the period beginning June 10, 1982 and ending April 17, 1986, Weitz admitted receiving payments totaling $176,868.94 from Blue Cross.
 
 
 9
 It is undisputed that Weitz himself never saw any of the patients for which payment was sought. Instead, the services were allegedly rendered by Kathleen DePierri, a licensed social worker, whose name did not appear on any of the claim forms. According to Weitz's declaration filed in the district court, he regularly met with Ms. DePierri to discuss her cases and supervise her treatment plans. Weitz stated in both his declaration and his deposition, which is part of the record in this case, that he retained 20 percent of all amounts received from Blue Cross and remitted the remaining amounts to DePierri. Kathleen DePierri was a licensed clinical social worker in Tennessee and, as such, did not satisfy the definition of "physician" under the Medical Expense Plan. The payments to Dr. Weitz for compensation of services provided by Ms. DePierri were therefore in violation of the terms of the Medical Expense Plan.[3]
 
 
 10
 B. History of the Case.
 
 
 11
 Blue Cross and the Medical Expense Plan filed the underlying lawsuit on April 1, 1988, seeking restitution from Dr. Weitz and Norma Redinger, the executrix of Kathleen DePierri's estate.[4] Defendant Weitz filed a motion to dismiss, alleging lack of subject matter jurisdiction under ERISA and lack of personal jurisdiction and improper venue as to the portions of the complaint which alleged jurisdiction arising under 28 U.S.C. Sec. 1331. The district court denied that motion on May 27, 1988, holding that "[a]n equitable action to recover benefits erroneously paid ... falls within the clear grant of jurisdiction contained in 29 U.S.C. Sec. 1132(a)(3)." Order dated May 27, 1988 at 1.
 
 
 12
 Defendant Weitz subsequently filed his answer, raising the affirmative defenses of estoppel and time bar by the applicable statute of limitations. Plaintiffs filed a motion for partial summary judgment against Weitz, seeking court determination that no benefits were due Dr. Weitz under the terms of the Medical Expense Plan and that Dr. Weitz was liable for repayment to the Medical Expense Plan all payments made to him from 1981 to 1986. Defendant Weitz opposed the motion for summary judgment on the grounds that his supervision constituted a compensable service under the terms of the plan, and that plaintiffs were estopped from recovering benefits wrongfully paid because they had approved and ratified the activities. The district court found that Weitz had failed to raise a genuine issue of material fact as to either of his two arguments and therefore granted the motion for summary judgment. The district court's findings on those points is not before us in the present appeal.
 
 II. ANALYSIS
 
 13
 A. ERISA Jurisdiction Pursuant to 29 U.S.C. Sec. 1132.
 
 
 14
 Dr. Weitz argues as an initial matter that the portion of the complaint alleging ERISA jurisdiction should have been dismissed by the district court for lack of subject matter jurisdiction. Title 29, U.S.C. Sec. 1132, which plaintiffs cite as the basis for ERISA subject matter jurisdiction, provides in relevant part:
 
 
 15
 A civil action may be brought--
 
 
 16
 (1) by a participant or beneficiary--
 
 
 17
 (A) for the relief provided for in subsection (c) of this section, or
 
 
 18
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
 
 
 19
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
 
 
 20
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; (emphasis added)
 
 
 21
 * * * * * *
 
 
 22
 As we read the plain language of the statute, Sec. 1132(a)(3) is applicable to the instant case, which has been brought by a "fiduciary ... to obtain ... equitable relief ... to redress [plan] violations or ... to enforce ... the terms of the plan." It is undisputed that Blue Cross is a fiduciary seeking the equitable remedy of restitution. It likewise seems clear that reimbursement to a psychologist who was not providing outpatient mental health services, or to a licensed clinical social worker who was, would violate the terms of the plan, which allows for payments only to physician providers of outpatient mental health services. The district court found that the payments were inconsistent with the terms of the plan, and that finding is not being challenged in the present appeal.
 
 
 23
 Appellant contends, however, that he is not the sort of defendant contemplated by Congress in drafting the ERISA civil enforcement provisions, and that the language of Sec. 1132(a)(3) should be construed to allow suits by fiduciaries only for purposes of ensuring continuing compliance with either the plan itself or the Act by parties to the plan. Appellant asserts that because he is a non-fiduciary, non-party to the plan, he has no obligation governed by ERISA, and Sec. 1132(a)(3) should not apply to this case.
 
 
 24
 Appellant relies heavily on the case of N.Y.S.A.-I.L.A. G.A.I. Fund v. Poggi, 617 F.Supp. 847, 849 (S.D.N.Y.1985), amended and reaff'd, 624 F.Supp. 443 (S.D.N.Y.1985), one of only two cases which have addressed the question of whether Sec. 1132(a) allows plan fiduciaries to bring an action to recover benefits wrongfully paid out.[5] In Poggi, the court held that
 
 
 25
 The language of [Sec. 1132(a)(3) ] indicates that federal jurisdiction only attaches to those actions brought by fiduciaries to ensure continuing compliance with either the pension plan itself or the broader requirements of ERISA. There is no indication from the statute, nor have the Funds cited any relevant case law, which supports their argument that a pension plan fiduciary may bring a federal action under this section to recover for past damages based on breach of contractual obligations under the pension plan. Therefore, while a pension plan beneficiary clearly does have the right to bring an action in federal court to recover benefits past due, there is no symmetrical grant of jurisdiction over actions by pension plans to recover benefits wrongfully paid out.
 
 
 26
 Poggi, 617 F.Supp. at 849. The opinion in Poggi reveals nothing more than what we have quoted above as to the source of its holding limiting the types of lawsuits which may be brought by fiduciaries pursuant to Sec. 1132(a)(3). The other district court which has addressed the question specifically declined to follow Poggi. In Northern California Food Employers & Retail Clerks Unions Benefit Fund v. Dianda's Italian-American Pastries, Co., Inc., 645 F.Supp. 160 (N.D.Cal.1986), the court considered whether Sec. 1132(a)(3) authorized a civil action by fiduciaries to recoup from an employer benefits improperly paid as a result of the employer's alleged inaccurate reporting of its employee's hours. The court held that the language allowing suits by fiduciaries for "redress of [plan] violations" includes compensating the plan for money lost due to such violations.[6]
 
 
 27
 We, like the court in Dianda's, find in the language of Sec. 1132(a)(3) no limitation on the types of defendants properly subject to an enforcement suit by a fiduciary, as suggested by the appellant, nor do we find language limiting suits to enforce the terms of the plan to actions "to ensure continuing compliance," as suggested by the court in Poggi.[7] Statutory interpretation must begin with the language of the statute, which must be interpreted in accordance with its "plain meaning." Fitzpatrick v. IRS, 665 F.2d 327 (11th Cir.1982). We must assume that Congress intended the ordinary meaning of the words it used and absent a clearly expressed legislative intent to the contrary, that language generally is dispositive. Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1522 (11th Cir.1987). We depart from the official text of the statute and seek extrinsic aid for ascertaining its meaning only if the language is unclear or if apparent clarity leads to absurd results when applied. American Trucking Associations, Inc. v. ICC, 669 F.2d 957 (5th Cir.1982), cert. denied, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).
 
 
 28
 In this instance, appellant points to no particular term of Sec. 1132(a)(3) as ambiguous; rather, he takes issue with reading the section as a whole to allow suits such as the present one, arguing that such a reading is inconsistent with Congressional intent in enacting ERISA. While, as appellant points out, suits by fiduciaries against third parties wrongfully in receipt of payments are not at the heart of Congressional purpose in passing ERISA,[8] neither do they contravene that purpose. On the contrary, it could be argued that allowing such suits would tend to preserve the integrity of ERISA-governed funds, which is consonant with the central goals of ERISA. Certainly our reading of the plain language of Sec. 1132(a)(3) does not lead to an absurd result in the context of ERISA so as to necessitate an exhaustive examination of the legislative history.
 
 
 29
 In any event, appellant cites us nothing from the legislative history to suggest that Congress did not intend to allow suits by fiduciaries to recover wrongful payments pursuant to Sec. 1132(a)(3). Even if the appellant were correct in his contention that the legislative history contains not the slightest hint of any congressional concern that benefit plans or their fiduciaries were having difficulties of any kind in obtaining justice through normal legal and equitable proceedings against non-parties to the plan with whom the plan did business, that would not be persuasive as a basis for limiting the straightforward language of Sec. 1132(a)(3). We cannot read the lack of specific legislative history confirming one possible application of a single provision in an enormous statutory structure to signify Congressional intent to exclude such an application.
 
 
 30
 Finally, the caselaw propounded by the appellant is similarly unpersuasive. Appellant cites a number of cases for the proposition that federal courts must be guided by the general policies underlying ERISA in formulating the body of ERISA common law. See e.g., Helms v. Monsanto, 728 F.2d 1416, 1420 (11th Cir.1984); Van Orman v. American Insurance Co., 680 F.2d 301, 306, 311-12 (3rd Cir.1982). Unlike the cases cited by the appellant, however, the district court in this instance did not "create additional rights under the rubric of common law" or "fill in interstitially ... the statutory pattern enacted in the large by Congress," see Van Orman v. American Insurance Co., 680 F.2d at 311-12. Nor was the district court required to "formulate rules of law" because there was "no particular provision in ERISA." See Helms v. Monsanto, 728 F.2d at 1420. Rather, the district court applied the plain legislative language of a specific ERISA provision governing the bringing of civil suits. We therefore affirm the district court's holding that "[a]n equitable action to recover benefits erroneously paid ... falls within the clear grant of jurisdiction contained in 29 U.S.C. Sec. 1132(a)(3)."
 
 
 31
 B. Doctrine of Changed Circumstances.
 
 
 32
 As a second basis for reversing the district court's order, appellant Weitz argues that summary judgment was precluded by the equitable doctrine of "change of position." Weitz contends that because it was undisputed that he turned over a significant portion (approximately 80 percent) of the erroneous payments to Kathleen DePierri, plaintiffs were precluded from recovering that portion of the payments from him, and summary judgment in their favor for the full amount was therefore improper. Appellant's argument is untimely and appears, in any event, to be without merit.[9]
 
 
 33
 Appellant raises this argument for the first time on appeal. Blue Cross argues that this court should not consider the merits of the argument both because it is an affirmative defense which was waived by virtue of not being pled, Fed.R.Civ.Pro. 8(c), and because the argument is untimely, being raised for the first time on appeal. Troxler v. Owens-Illinois, Inc., 717 F.2d 530, 532 (11th Cir.1983). Weitz responds that change of position is not an affirmative defense within the meaning of Rule 8(c), and that the instant case is distinguishable from Troxler because it does not require the development of factual issues. Weitz further invokes Federal Rule of Civil Procedure 15(b), arguing that Rule 15(b) permits, and even requires, amendment of pleadings to conform to the evidence presented by the parties, particularly in a context such as this where the proceedings are purely equitable.
 
 
 34
 As an initial matter, we note that Fed.R.Civ.Pro. 15(b) is inapposite where, as here, there was no trial because the district court decided the case at the summary judgment stage. It is likewise inapposite because there was no Rule 15(b) motion made in the district court; rather, the appellant argues for the first time on appeal that because Rule 15(b) might allow or require the district court to amend the pleadings, this court should find the district court's failure to do so sua sponte a basis for reversing its summary judgment order. Rule 15(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." (emphasis added) Appellant suggests that where a party includes information in declarations or affidavits related to a summary judgment motion which might form the basis of an argument or defense, but the party fails to articulate such an argument, the district court may nevertheless be required to consider the argument based on Rule 15(b) and can be reversed on appeal for failing to do so. Taking appellant's contention to its logical conclusion would render the summary judgment process an exercise in futility, and would place the onus on the district court to distill any possible argument which could be made based on the materials before the court. Presenting such arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court, and Rule 15(b) provides no basis for this court to consider appellant's change of circumstances argument for the first time on appeal.
 
 
 35
 We need not reach the question of whether "change of circumstances" is an affirmative defense within the meaning of Fed.R.Civ.Pro. 8(c), and thus waived by defendant's failure to plead it at an earlier point, because we find that the general rule that a court will not consider issues raised for the first time on appeal applies in this instance and prevents us from considering appellant's argument. "This circuit and the former Fifth Circuit have consistently held that a court will not consider on appeal for the first time a question that requires development of factual issues." Troxler v. Owens-Illinois, 717 F.2d 530 (11th Cir.1983), citing Hall v. Board of School Commissioners, 681 F.2d 965, 969-70 (5th Cir.1982) (Unit B); Martinez v. Mathews, 544 F.2d 1233, 1237 (5th Cir.1976); Pierre v. U.S., 525 F.2d 933, 936 (5th Cir.1976); Guerra v. Manchester Terminal Corp., 498 F.2d 641, 658 n. 47 (5th Cir.1974).
 
 
 36
 Appellant attempts to distinguish Troxler on the basis the argument presented here is purely one of law, not requiring development of any factual issues. Appellant's own contentions in support of his change of circumstances argument, however, belie his assertion that factual development is not required. "Change of circumstances may be a defense or a partial defense if the conduct of the recipient was not tortious and he was no more at fault for his receipt, retention or dealing with the subject matter than was the claimant." Restatement of Restitution, Section 142(2). Appellant asserts that the plaintiffs have acknowledged his lack of fault by purposely limiting their case to an action for restitution arising from a mistake of fact rather than alleging intentional misrepresentation or fraudulent conduct. Plaintiffs' choice of legal theories, however, is irrelevant to the question of Dr. Weitz's degree of fault. That plaintiffs opted to pursue only equitable relief, thus obviating any requirement that they prove fault, says nothing about the relative fault of plaintiffs and defendant which must be considered in order to resolve the applicability of the change of circumstances defense.
 
 
 37
 Appellant alleges that he acted in accordance with the normal, standard and widespread practice within his profession; that he had no knowledge of the requirements of the plan; and that he paid 80% of all monies received to Kathleen DePierri. He asserts that none of these allegations are disputed in the record. It is, however, that very lack of dispute, because of appellant's failure to raise the change of circumstances defense in the proceedings before the district court, which makes it impossible for this court to consider the matter for the first time on appeal. Appellant also asserts that although "Dr. Weitz was admittedly negligent ..., Blue Cross and the Plan are at least equally at fault." Reply Brief at 12.[10] However, the questions of plaintiffs' fault and their fault relative to that of Dr. Weitz were entirely undeveloped in the record before the trial court.
 
 
 38
 Applicability of the defense of changed circumstances, presented by appellant as a pure matter of law based on the record before us, cannot be decided without further factual development. What the prevailing practice is in the medical and psychological communities regarding supervisor signature of claims forms, whether Dr. Weitz was negligent in his failure to assure that the practice was proper,[11] and what information Blue Cross properly should have provided to health care suppliers, were undeveloped in the record because they were not material to the arguments put forward by Dr. Weitz in his opposition to the motion for summary judgment. Because determining the applicability of the defense of changed circumstances would require further development of a factual record, we cannot consider this argument for the first time on appeal.
 
 
 39
 C. Statute of Limitations.
 
 
 40
 Finally, appellant argues that the district court was precluded from granting summary judgment in favor of the plaintiffs by the conclusory allegations in his answer that the claims were barred by the statute of limitations. Weitz, in his answer to the complaint filed in the district court, asserted that "allegations in the complaint are barred by the applicable statute of limitations." Answer at p 15. In the present appeal, Weitz argues that summary judgment should not have been granted because a significant question was raised in the record as to the statute of limitations on some unidentified portion of the plaintiff's claims. As Blue Cross points out, however, Weitz has not specified in either the district court record or in his briefs filed on appeal, which claims he alleges are barred by the statute of limitations, or even which statute of limitations he asserts is applicable.[12] In his brief on appeal, Weitz asserts that the statute of limitations begins to run from the date of payment, but fails to indicate which statute of limitations he contends should apply and which of the plaintiffs' claims would thereby be precluded.
 
 
 41
 We find utterly unpersuasive Weitz's contention that the district court was precluded from granting summary judgment by his allegations that an unspecified statute of limitations barred some admittedly unidentified portion of the plaintiffs' claims. Even were Weitz correct as a substantive matter that certain of plaintiffs' claims are precluded by the statute of limitations, the inclusion of a vague allegation regarding the statute of limitations in an answer would be insufficient to defeat a motion for summary judgment. Federal Rule of Civil Procedure 56(e) plainly states that:
 
 
 42
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.
 
 
 43
 In this instance, Weitz did not raise any issues of material fact as to the dates on which he received the improper payments. Nor did he specify which of those payments were subject to a statute of limitations. Indeed, there was no mention of the statute of limitations in the portion of the record related to the summary judgment motion. Because raising of the statute of limitations is an affirmative defense, see Fed.Rule Civ.Pro. 8(c), and defendant has the initial burden of making a showing that the statute of limitations defense is applicable, see e.g., Harrison v. Thompson, 447 F.2d 459, 460 (5th Cir.1971) (per curiam) and Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153 (3rd Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989),[13] it is all the more clear that Weitz failed to raise a statute of limitations question sufficient to defeat plaintiffs' motion for summary judgment.
 
 III. CONCLUSION
 
 44
 We find the appellant's contention regarding ERISA jurisdiction to be without merit and his arguments regarding the doctrine of change of circumstances and the statute of limitations to be untimely. Accordingly, we AFFIRM the judgment of the district court granting summary judgment to the plaintiffs.
 
 
 
 *
 Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Because we find section 502 of ERISA to be applicable in this instance, we need not consider whether federal question jurisdiction exists pursuant to 28 U.S.C. Sec. 1331. We likewise need not consider the personal jurisdiction and venue questions which would arise if subject matter jurisdiction depended on 28 U.S.C. Sec. 1331 rather than 29 U.S.C. Sec. 1132
 
 
 [2]
 The Plan defines "physician" as, among other things, "a certified and registered psychologist when providing psychological services in connection with the diagnosis or treatment of a mental condition."
 
 
 [3]
 In addition to the fact that Ms. DePierri was not a qualified provider, i.e. a "physician," under the terms of the Plan, there is an indication in the record that some of the sessions billed to the Plan never took place at all. The question of whether the payments were proper under the terms of the Plan was decided by the district court and is not before us on appeal. We thus proceed on the basis that all of the payments to Dr. Weitz were, in fact, erroneous
 
 
 [4]
 Defendant Redinger eventually entered into a consent judgment and is not a party to this appeal
 
 
 [5]
 In addition to the two district court cases, two Circuits have touched on the issue. In Kentucky Laborers Dis. Council Health & Well v. Hope, 861 F.2d 1003 (6th Cir.1988), the Sixth Circuit avoided the question before us because it found federal question jurisdiction pursuant to 28 U.S.C. Sec. 1331. In Connors v. Amax Coal Co., Inc., 858 F.2d 1226, 1229 n. 4 (7th Cir.1988), the Seventh Circuit stated in dicta that "Section 502(a)(3) does not apply to suits by fiduciaries to recover money that they paid to outside entities in violation of the terms of ERISA or the plan," citing Northeast Dep't ILGWU v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 153-54 (3d Cir.1985)
 We find the statement in Connors unpersuasive on two grounds. First, as we have already indicated, the question was not properly before the Seventh Circuit because Sec. 1132(a)(3) was not included as a jurisdictional basis in the plaintiffs' complaint. 858 F.2d at n. 4. Secondly, the Connors court's interpretation of ILGWU v. Teamsters, generalizes from language which we view as applicable only to the particular facts of that case, which involved two separate plans. The Third Circuit in ILGWU v. Teamsters held that the fiduciary of the ILGWU plan could not sue to enforce the terms of the Teamsters fund, for which he was not a fiduciary. The court found that "Section 1132(a)(3) contemplates 'fiduciaries' suing to enforce the terms of 'the plan,' meaning the terms of the plan regarding which they have a fiduciary duty.' " In that factual setting, the court also stated that in its view, where a fiduciary is suing to enforce the provisions of ERISA pursuant to Sec. 1132(a)(3), "Congress contemplated that there be a fiduciary relationship between the fiduciary bringing suit and the fund being sued in all cases brought under Sec. 1132(a)(3)." ILGWU v. Teamsters, 764 F.2d at 154, n. 5. That language would not apply in the instant case, however, where the party being sued is not a fund, and where the fiduciary is seeking to enforce the terms of the plan rather than ERISA provisions. In addition, it is clear that the holding in ILGWU would not apply here, where the fiduciary seeks to enforce the terms of the plan for which it has fiduciary responsibility rather than the terms of another plan.
 See also, Kanawha Valley Power Co. v. Justice, 383 S.E.2d 313 (W.Va.1989) (holding that the better reasoned cases have concluded that suits by fiduciaries for restitution are permissible either under ERISA or the federal common law).
 
 
 [6]
 The court in Dianda's was concerned primarily with the defendant's contention that Sec. 1132(a)(3) offers only equitable relief and not damages, and relied on Justice Brennan's concurring opinion in Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) for the proposition that "while a given form of monetary relief may be unavailable under ERISA for other reasons ... it cannot be withheld simply because a beneficiary's remedies under ERISA are denominated 'equitable.' "
 
 
 [7]
 While we do not rely on this distinction in reaching our decision, we note that Poggi is also distinguishable because the fiduciary in that case sought to recover from the beneficiary, rather than from a third-party service provider, the benefits wrongfully paid out. To that extent, the Poggi court's reliance on the lack of a jurisdictional provision for fiduciaries symmetrical to Sec. 1132(a)(1)(B), which allows participants and beneficiaries to sue for benefits due, is inapplicable to the case at hand
 
 
 [8]
 Throughout the legislative history and Congressional declaration of policy written into ERISA, it is clear that "the crucible of congressional concern was misuse and mismanagement of plan assets of by plan administrators." Massachusetts Life Insurance Co. v. Russell, 473 U.S. at 140 n. 8, 87 L.Ed.2d at 102-03, n. 8. Congress was additionally concerned to improve the equitable character and soundness of pension plans and to prevent the wrongful denial of benefits to employees. See 29 U.S.C.A. Sec. 1001
 
 
 [9]
 While we do not reach the merits of appellant's change of circumstances defense because it is untimely and this court therefore lacks a sufficiently developed record to decide the question, it appears that Weitz would be precluded from relying on the change of circumstances or position doctrine because of his role in misrepresenting to Blue Cross who was supplying the claimed services. See Restatement of Restitution, Section 142, comment (g) (1937) ("If either the claimant or recipient has failed to use care to ascertain relevant facts, such person is at fault within the meaning of this section. Likewise, a misrepresentation by the recipient, even though innocent, constitutes fault and a change of circumstances may not bar a claimant who has been guilty of no fault, if the misrepresentation caused the mistake.") (emphasis added)
 
 
 [10]
 Dr. Weitz alleges that the problem presented in this case "has been an area of significant change and some dispute within the medical profession" and that had plaintiffs submitted a simple statement to health care providers explaining the basic terms and limitations of the plan, the wrongful payments never would have taken place. Dr. Weitz further suggests that the problem could have been avoided by providing dual signature lines on the claim forms themselves
 
 
 [11]
 When Ms. DePierri initially approached Dr. Weitz about the supervision and billing arrangement, he requested that she obtain approval from the ethics committee, of the local chapter of the Tennessee Psychological Association. Ms. DePierri, according to Dr. Weitz, informed him that she received a favorable response from the ethics committee, approving the arrangement. Dr. Weitz never examined the letter from the committee himself, however, which, contrary to the alleged representation by Ms. DePierri, states that for services rendered by the social worker and not the psychologist under such an arrangement, "both names must appear on the insurance form to insure that the insurance company knows exactely (sic) who delivered the service."
 
 
 [12]
 Because 29 U.S.C. Sec. 1132 does not specify a statute of limitations, federal courts must look to the most analogous state law statute of limitations for the governance of suits brought pursuant to ERISA's civil enforcement provisions. Clark v. Coats & Clark, 865 F.2d 1237 (11th Cir.1989). While we do not reach the question of which Alabama statute of limitations would apply in this instance, because we find that Weitz failed to raise the issue adequately before the district court, we note that Blue Cross suggests, and Weitz does not dispute, that the applicable statute of limitations in this instance is six years, as set out in Code of Alabama Sec. 6-2-34 (1975). Since the first payment which plaintiffs seek to recover was made on June 10, 1982, and the complaint was filed on April 1, 1988, the claims would all fall within that limitations period
 
 
 [13]
 Once a defendant shows that the applicable statute of limitations bars the claim, the burden shifts to the plaintiff to demonstrate that an exception or tolling provision applies. In this instance, however, the defendant failed to make the threshold showing