## PRINTING INDUSTRY OF ILLINOIS EMPLOYEE BENEFIT TRUST, Plaintiff,

v.

## James M. STOUT, Defendant.

### No. 91 C 2984.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 7, 1994.

David T. Rallo, Lawrence David Mishkin, Frank F. Tully, Jr., Lynn N. Donley, Rallo & Tepper, and Jeffrey Scott Johnston, Katz, Randall & Weinberg, Chicago, IL, for plaintiff.

Peter F. Ferracuti, Mark Alan Schindler, Law Offices of Peter F. Ferracuti, Ottawa, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

GOTTSCHALL, United States Magistrate Judge.

This matter is before the court on defendant's motion to dismiss. For the reasons set forth below, the motion is denied.

### BACKGROUND

Plaintiff Printing Industry of Illinois Employee Benefit Trust has brought this action seeking to recover the amount of medical benefit payments made by it on behalf of defendant James M. Stout. Plaintiff administers a group health insurance plan ("the Plan") that was offered to Klemscott Printing Company, defendant's employer.

The payments in question relate to medical treatment for acute hemaliptic anemia, a disease of the blood. Defendant began to receive treatment for the condition in or around December 1988, and he first filed a claim for benefits on January 19, 1989.

The Plan's governing instrument contains the following exclusion for work-related illnesses or injuries:

> No payment will be made under this Plan in any event for the following:
>
>    \*     \*     \*     \*     \*     \*
>
> Any treatment or service resulting from sickness or injury which is covered by a Workers' Compensation Act or other similar legislation; or due to injury or sickness incurred as the result of, or in the course of, any employment for wage or profit.

In defendant's application for benefits, he was asked to answer the following question: "Was illness or accident work related?" Defendant responded by checking the box designated "no." About 15 months later, though, defendant filed a claim for workers' compensation with the Illinois Industrial Commission ("the Industrial Commission" or "the Commission"). At that time, defendant provided the following description of how his injury occurred:

> Petitioner exposed to various chemicals and printing inks on a daily basis over a period of five years resulting in acute hemaliptic anemia.

On or about June 5, 1990, plaintiff ceased making benefit payments on defendant's behalf.

In its one-count complaint, plaintiff alleges that at the time defendant applied for benefits under the Plan, he knew or had reason to know that his injury was work-related, and therefore not covered by the Plan. Plaintiff's sole theory of relief is misrepresentation or fraud. It does not seek to enforce any particular provision of the Plan, such as a reimbursement or subrogation clause.

Defendant makes four arguments in moving to dismiss. First, he contends that the federal court lacks subject matter jurisdic-tion over this dispute, as the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., does not authorize the bringing of such an action by employee benefit plans. Second, he argues that plaintiff has brought this action for the improper purpose of frustrating the exercise of his legal right to seek workers' compensation. Next, defendant maintains that plaintiff has suffered no damage as a consequence of the alleged fraud, as it will be subrogated to defendant's rights against his employer and the employer's workers' compensation insurance carrier in the event that the Industrial Commission determines that his injury is work-related. Defendant's final argument calls the court's attention to the fact that his claim before the Industrial Commission is still pending. Because of the Industrial Commission's experience and expertise in matters such as this, defendant asks that this litigation be suspended pending a decision by that administrative body on the question whether his injury is work-related.

The court summarily rejects two of defendant's arguments. Although defendant would characterize this suit as an attempt to penalize or hinder him in the exercise of his right to seek worker's compensation, such conclusion could only be drawn after development of the facts in this case. Also, plaintiff has sufficiently alleged injury in its complaint, as it claims to have paid out benefits of $33,740.13 that were not due defendant under the Plan's terms. Since defendant can only speculate as to whether plaintiff might at some point in the future obtain reimbursement from another source, the complaint will not be dismissed for failure to allege injury.

Turning to defendant's remaining arguments, both concern the court's jurisdiction. This memorandum addresses each argument in turn.

*Question of Jurisdiction Under ERISA*

In paragraph 1 of its complaint, plaintiff asserts as alternative bases for federal jurisdiction ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3),[1] or the general grant of juris-

---

**1.** ERISA § 502(a)(3) provides that a civil action may be brought—

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any

diction under 28 U.S.C. § 1331 over federal questions. Without addressing whether this suit should be treated as one arising under the federal common law, defendant moves to dismiss for lack of jurisdiction under § 1132.

In moving to dismiss, defendant relies on a decision finding that federal courts lack jurisdiction over actions by pension plan fiduciaries to recover benefits wrongfully accepted by a pension plan beneficiary. *NYSA–ILA GAI Fund v. Poggi*, 617 F.Supp. 847, *amended and reaff'd*, 624 F.Supp. 443 (S.D.N.Y. 1985). *Poggi* looked first to the language of § 1132, and concluded that federal jurisdiction attached only to those actions brought by fiduciaries to ensure continuing compliance with either the terms of a pension plan or the broader requirements of ERISA. 617 F.Supp. at 849. Characterizing the suit before it as an action to recover for past damages based on breach of contractual obligations under a pension plan, *Poggi* opined that "while a pension plan beneficiary clearly does have the right to bring an action in federal court to recover benefits past due, there is no symmetrical grant of jurisdiction over actions by pension plans to recover benefits wrongfully paid out." *Id.*

Defendant cites no cases following *Poggi*, and other courts have expressed disagreement with its result. *Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1548 (11th Cir.1990); *Northern California Food Employers and Retail Clerks Unions Benefit Fund v. Dianda's Italian–American Pastry Co., Inc.*, 645 F.Supp. 160, 162 (N.D.Cal.1986). In *Weitz*, the Eleventh Circuit considered the question of jurisdiction over an ERISA plan fiduciary's action to recover payments erroneously made to a physician. The *Weitz* court examined the language of § 1132(a)(3) and found no language limiting suits by fiduciaries to actions to ensure compliance with a plan. 913 F.2d at 1548. *Weitz* characterized the suit as an action by a fiduciary seeking the equitable remedy of restitution. *Id.* at 1547. In concluding that it had jurisdiction over the ac-

tion before it, *Weitz* noted that such suits would tend to preserve the financial integrity of ERISA-governed funds, a goal consonant with the central goals of ERISA. *Id.* at 1548–1549. The Eleventh Circuit has since reiterated that § 1132(a)(3) authorizes a fiduciary in appropriate circumstances to bring an equitable claim for restitution of benefits mistakenly paid out. *First Nat'l Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.*, 960 F.2d 1546, 1553 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). *See also Provident Life & Accident Ins. Co. v. Walker*, 906 F.2d 985, 988 n. 5 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). Although not addressing the question under § 1132, the Sixth Circuit has found that a pension plan's suit to recover amounts erroneously paid a beneficiary arose under the federal common law. *Kentucky Laborers District Council Health and Welfare Fund v. Hope*, 861 F.2d 1003, 1005 (6th Cir.1988). Having determined that ERISA would preempt the plan's restitution claim under state law, *Hope* concluded that the claim would arise under the federal common law. *Id.*

The Seventh Circuit has in the past stated that § 1132(a)(3) does not apply to suits by ERISA fiduciaries to recover money paid to "outside entities" in violation of the terms of ERISA or the plan in question. *Connors v. Amax Coal Co., Inc.*, 858 F.2d 1226, 1229 n. 4 (7th Cir.1988) (citing *Northeast Dep't ILG–WU v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 153–154 (3d Cir. 1985)). *Connors* was not, however, an action for restitution of funds erroneously paid a benefit plan participant. Also, in *Connors*, the court commented that even if the claims arose under ERISA or federal common law, it would still have been preempted by the exclusive jurisdiction provisions of another statute. 858 F.2d at 1230–1231. This court cannot say that *Connors* precludes a finding

---

provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). For convenience, all further statutory cites will be to Title 29 of the U.S.Code, rather than to ERISA's internal section numbers.

of jurisdiction over this suit under § 1132(a)(3).

The Seventh Circuit has not reached the issue presented in this case. Several of its other decisions do, however, assist in the resolution of the question. Since *Connors*, the court of appeals has found that an employer could seek restitution of unauthorized contributions to a benefit fund made on behalf of an employee. *UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of America*, 998 F.2d 509, 512 (7th Cir.1993). In reaching its conclusion, the panel in *UIU* reasoned that although § 1132 does not expressly authorize such an action, a state law restitution claim would be preempted by ERISA. *Id.* If recovery of mistaken contributions was not permitted, employers would be less inclined to sponsor ERISA-qualified plans. *Id.* at 513. Thus, denial of a federal cause of action would ultimately undermine ERISA's goal of expanding pension and welfare benefit plan coverage. *Id. See also Construction Industry Retirement Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993) (ERISA lets courts establish federal common law governing restitution of mistaken payments). In other decisions, the court of appeals has also allowed fiduciaries to bring actions to enforce the subrogation and reimbursement provisions of a plan, *Shannon v. Shannon*, 965 F.2d 542 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 677, 121 L.Ed.2d 599 (1992),[2] and to enforce a coordination-of-benefits provision. *Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576 (7th Cir.1991). Plaintiff cites these decisions as recognizing that plan trustees have rights to "generally enforce the terms of employee benefit trust plans in federal court."

As already noted, plaintiff does not seek to enforce a particular provision of the Plan, such as a subrogation clause. Rather, it would characterize this suit as one to redress a violation of the Plan's terms. Since recovery of benefits wrongly paid out would tend to preserve the financial integrity of the Plan, under the Eleventh Circuit's reasoning in *Weitz*, the court would have jurisdiction under § 1132(a)(3). The *Connors* decision creates some uncertainty as to how the Seventh Circuit would rule on the question of the scope of § 1132(a)(3),[3] but it has found in *UIU* that a restitution claim is preempted by ERISA. That restitution claim was cognizable under the federal common law. The allowance of other actions by fiduciaries in *Shannon* and *Winstead* also lead this court to conclude that federal jurisdiction would be found, so as not to leave plaintiff without a remedy. Because it is unnecessary to the resolution of this motion to specify whether jurisdiction arises under § 1132(a)(3) or the federal common law, the court does not do so in this opinion.[4]

*Primary Jurisdiction*

This lawsuit was filed in May 1991. Later, the action was stayed pending the Industrial Commission's decision on the question of whether plaintiff's injury was work-related. As of February 1994, the Commission had not rendered a decision and the stay was lifted. Defendant asks that a stay again be imposed, arguing that the question of a work-related injury is within the primary jurisdiction of the Commission. Plaintiff responds that defendant's request should be denied, as defendant has had ample time to present his case to the Commission.

The doctrine of primary jurisdiction

**2.** *Shannon* stops short of an explicit finding that there is federal question jurisdiction over an action to recover amounts paid out in benefits. Instead, the court of appeals stated that the benefit plan's assertion of a claim to subrogation and reimbursement "more than likely" invoked jurisdiction under ERISA §§ 1132(a)(3)(B)(ii) and 1132(e). 965 F.2d at 546, 553.

**3.** Without citing *Connors* or any other authority, Judge Hart of this district has stated that "under § 1132(a)(3), a fiduciary may bring suit only for injunctive or equitable relief—not to recover benefits or monies due." *Dugan v. Nickla*, 763

F.Supp. 981, 982 (N.D.Ill.1991). Notwithstanding that conclusion, Judge Hart then went on to find jurisdiction under the federal common law over the subrogation claim asserted by fund trustees. *Id.* at 983.

**4.** The court hesitates to conclude that plaintiff's claim arises under federal common law, rather than § 1132(a)(3), as the Seventh Circuit has cautioned against unwarranted expansion of federal common law where a comprehensive statute such as ERISA deals with the subject matter in dispute. *See UIU*, 998 F.2d at 512.

... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.... No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

*United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) (citations omitted). The Seventh Circuit has noted three policy reasons for applying the doctrine: (1) to achieve consistency and uniformity in decisions, particularly where the development of the law is dependent to some degree on administrative policy; (2) to allow uniquely qualified administrative agencies to resolve complex matters outside the conventional expertise of courts; and (3) to achieve judicial economy where settlement of a dispute within the agency will obviate the need for courts to intervene. *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir.1991). Although the parties have not provided any detailed discussion of the Industrial Commission's powers and expertise, it would seem that a stay of this action would promote goals of judicial economy and consistency and uniformity in decisions. The court also bears in mind that there are unanswered questions concerning the preclusive effect of its decision in this case. It would seem that denial of a stay would have a greater negative impact on defendant than on plaintiff.[5]

Having reflected on the impact of a stay, the court is willing to revisit the question at the next status hearing in this case. The parties should be prepared to address the issue at that time.

## CONCLUSION

Having considered and rejected the arguments made in defendant's motion to dismiss, the court denies the motion. The question of whether to impose a stay of this litigation will be addressed at the upcoming status hearing on September 16, 1994.

---

**5.** The disparity in relative risk stems from the possibility that this court and the Industrial Commission could reach inconsistent results. For instance, even though this court might find that defendant knew or had reason to know that his illness was work-related, that finding might not resolve the issue before the Industrial Commission—whether the illness is in fact work-related. Thus, defendant conceivably would receive no reimbursement of his medical costs from either the Plan or through the workers' compensation system. In contrast, if plaintiff has subrogation rights, it might be repaid even if this court and the Industrial Commission both ruled in defendant's favor.