**ADMINISTRATIVE COMMITTEE, as Administrator of the Associates' Health and Welfare Plan, Plaintiff–Appellant,**

v.

**Patricia A. GAUF, Defendant–Appellee.**

No. 98–3131.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1999.

Decided Aug. 11, 1999.

Peter R. Bulmer (argued), Michael T. Graham, Jackson, Lewis, Schnitzler & Krupman, Chicago, IL, for Plaintiff-Appellant.

Lance R. Mallon (argued), Wood River, IL, for Defendant-Appellee.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Patricia Gauf was employed by Wal–Mart and was covered under Wal–Mart's Associates' Health and Welfare Plan ("the Plan"). The Plan is administered by the Administrative Committee ("the Committee"). In this action, the Committee seeks an order compelling Ms. Gauf to reimburse the Plan for $9,870 in benefits it has paid to her. The district court dismissed the claim; it held that it did not have subject matter jurisdiction, or, in the alternative, that the *Colorado River* doctrine[1] counseled that it should decline to exercise jurisdiction. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

# I

## BACKGROUND

While she was a participant in the Plan, Ms. Gauf was injured in an automobile accident; her vehicle collided with another vehicle. Ms. Gauf received medical treatment for her injuries. The Plan reimbursed Ms. Gauf $9,870.68 for this treatment. Ms. Gauf later brought a tort

---

1. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

action in state court against the two people involved in the accident. Although she received a $104,000 verdict, she was able to collect only $36,000, the entire amount paid by the insurers of the defendants in the state case. After entry of the verdict, and in the same state court proceeding, Ms. Gauf filed a motion to adjudicate and allocate liens held by 13 medical creditors and an insurance creditor. Although Ms. Gauf did not name the Plan or the Committee as defendants to the motion, she listed the Plan as claiming $9,870.68 as subrogation for medical payments.

In the present action, the Committee seeks an order compelling Ms. Gauf to reimburse the $9,870.68 paid to her as benefits under the Plan.[2] The Committee bases its claim on a Plan provision. That provision states:

> Right to Reduction and Reimbursement (Subrogation).
>
> The Plan has the right to (1) reduce or deny benefits otherwise payable by the Plan and (2) receive (subrogate) 100% of the benefits previously paid by the Plan to the extent of any and all of the following payments:
>
>> —Any judgment, settlement, or any payment, made or to be made by a person considered responsible for the

condition giving rise to the medical expense or by their insurers.

> —Any auto or recreational vehicle insurance coverages or benefits, including, but not limited to, uninsured motorist coverage.
>
> —Business and homeowners medical liability insurance coverage or payments.
>
> —Attorney's fees.

R.1, Ex.A at D16.

## II

## DISCUSSION

The Committee submits that we have subject matter jurisdiction pursuant to the federal question jurisdiction statute, 28 U.S.C. § 1331, and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). ERISA § 502(a) provides:

> A civil action may be brought—...
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

---

**2.** The most relevant portions of the complaint state:

> IV. Specific Performance and enforcement of the plan under 29 U.S.C. § 1132(a)(3).
>> 16. The provisions of the [P]lan, by their plain language and by the interpretation of the Plan by the Administrative Committee, require 100%, first-dollar reimbursement of benefits previously paid by the Plan to the extent of any recovery or payment by the participant or beneficiary.
>> 17. Under the terms of the [P]lan, Defendant has refused to fully reimburse the Plan for the $9,870.68 in medical expenses paid to Defendant and/or to her medical providers.
>> 18. Under 29 U.S.C. § 1132(a)(3), the Administrative Committee requests that this Court enforce the terms of the [P]lan and enter an order enjoining Defendant from continuing to violate

> the terms of the [P]lan and compelling Defendant to reimburse the Plan for the entire amount of $20,999.32 paid on Defendant's behalf for her injuries suffered in the Accident....
>
> VI. Relief Requested
> For the foregoing reasons, the Administrative Committee respectfully requests that this Court enforce the terms of the Plan and render judgment in its favor, as administrator of the Plan, and against Defendant Patricia A. Gauf for the following:
>> A. An order compelling 100%, first-dollar reimbursement of the $9,870.68 in benefits paid to Defendant Patricia A. Gauf, without reduction for her attorneys' fees, court costs or any other expense, under the terms of the [P]lan;
>> B. Attorneys' fees and costs; and
>> C. All other relief to which the Administrative Committee may be entitled.
>
> R.1 at 3–4.

29 U.S.C. § 1132(a)(3). The federal courts possess exclusive jurisdiction over suits brought pursuant to this section. See 29 U.S.C. § 1132(e).

## A. Subject Matter Jurisdiction Pursuant to ERISA § 502(a)(3)

The Administrative Committee contends that, under the plain wording of ERISA § 502(a)(3), we have jurisdiction because this suit is "[a] civil action . . . brought— . . . (3) by a . . . fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3).

The question we must answer, therefore, is whether the complaint in this case falls within the terms of ERISA § 502(a)(3). In resolving this issue, we must make two inquiries: 1—whether the Committee is a fiduciary under § 503(a)(3); 2—whether the Committee is seeking equitable, rather than legal, relief.

### 1.

■ We first address whether the Committee is a fiduciary for purposes of ERISA § 502(a)(3). 29 U.S.C. § 1002(21)(A) defines "fiduciary":

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). The Plan states that it "expressly gives the Plan Adminis-

trator or [its] designee(s) discretionary authority to resolve all questions concerning the administration, interpretation, or application of the Plan." R.1, Ex.A at Q2. It is clear, therefore, that the Administrative Committee is a fiduciary within the meaning of ERISA § 502(a)(3).

### 2.

■ We next turn to the question whether the Administrative Committee is seeking equitable relief. In its brief in this court, the Committee argues that it is essentially seeking restitution under the Plan. Ms. Gauf responds that what the Committee is actually seeking is $9,870.68 in damages for Ms. Gauf's alleged violation of the terms of the Plan. Such claims for damages are in essence legal claims, she argues.

The plain wording of § 502(a)(3) makes clear that, if the Committee is seeking legal relief, we do not have jurisdiction. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255–62, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Although the pertinent parts of the complaint employ a variety of terms to express the relief requested, we believe that a fair reading of the document in its totality makes clear that the Committee is seeking an equitable remedy against Ms. Gauf to ensure her compliance with the terms of the Plan. For example, the complaint requests "specific performance and enforcement" of the contract and an "order enjoining Defendant from continuing to violate the terms of the plan."

As the parties note, other circuits have addressed similar situations. The Ninth Circuit has held that the substance of a medical plan's reimbursement claim was for money damages, even though it was phrased in terms of enforcing the terms of the plan. *See FMC Med. Plan v. Owens*, 122 F.3d 1258, 1261–62 (9th Cir.1997). That court consequently concluded that § 502(a)(3) does not grant federal courts jurisdiction over such claims. However, the Eleventh and the Eighth Circuits have taken a different view. In *Blue Cross &*

*Blue Shield of Alabama v. Sanders*, 138 F.3d 1347 (11th Cir.1998), the Eleventh Circuit rejected the *FMC Medical* holding as "an unduly narrow reading" of Supreme Court precedent. *Id.* at 1353 n. 5. Rather, held the Eleventh Circuit, federal courts have jurisdiction over a medical plan's suit for specific performance of a reimbursement clause because specific performance is a form of equitable relief. *See id.*; *see also Southern Council of Indus. Workers v. Ford*, 83 F.3d 966, 969 (8th Cir.1996).

We believe that the approach of the Eleventh and Eighth Circuits is in harmony with our own case law. Our circuit consistently has held that a complaint purporting to state a claim for equitable relief under a reimbursement clause in a benefits contract is an equitable claim for purposes of ERISA § 502(a)(3). *See Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 615 (7th Cir.1995); *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Neurobehavioral Assocs.*, 53 F.3d 172, 173–74 (7th Cir.1995); *see also Health Cost Controls v. Skinner*, 44 F.3d 535 (7th Cir. 1995) (remanding case to district court to allow plaintiff to clarify that it was seeking restitution rather than money damages). We see no reason to depart from the course already charted by these cases. Accordingly, we hold that the complaint states a claim for equitable relief.

### 3.

We do not believe that this case is controlled by our decisions in *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997), and a similar case relied upon by Ms. Gauf, *Speciale v. Seybold*, 147 F.3d 612 (7th Cir.1998). In *Blackburn*, an injured driver settled a negligence claim with the driver of the car at fault. The injured driver's lawyers, under the Illinois common fund doctrine, claimed a right to the settlement proceeds. The injured driver's welfare plan, which had paid the injured driver for the injury, also claimed a right to the settlement proceeds under a reimbursement provision in the insurance plan. The injured driver filed a motion in the state court which oversaw the settlement, asking that court to decide who should receive the settlement proceeds. The welfare plan then removed the case to federal district court. This court held that removal was improper because the district court did not have subject matter jurisdiction over the claim. It reasoned that the injured driver's initial claim, which was a tort suit, did not arise under federal law. Additionally, the court noted that "[t]he fundamental claim [of the motion]—that the Blackburns should be credited, for purposes of their duty to reimburse [the welfare plan], with sums paid to the attorney whose work produced the fund—arises under state law." *Id.* at 495. The court also rejected the claim that a federal defense—ERISA's preemption of the Illinois common fund doctrine—could create federal question jurisdiction.

*Blackburn* and *Speciale* do not govern the case that we have before us today. As we already noted, unlike the situations in those cases, the complaint here states a claim under ERISA § 502(a)(3), and is therefore within our jurisdiction. In *Blackburn* and *Speciale*, there were no such federal claims under ERISA § 502(a)(3) or otherwise; the claims removed were state claims (a tort action and a motion to adjudicate liens).

We also note that the right asserted by the Administrative Committee in this federal action is most appropriately characterized as a reimbursement right under the terms of the Plan and therefore a matter of federal law and not a subrogation right arising under state law. The Plan is seeking to protect its contractual right to repayment from Ms. Gauf. *See Unisys Med. Plan v. Timm*, 98 F.3d 971, 973 (7th Cir.1996) (distinguishing reimbursement and subrogation rights). Because the Committee is a fiduciary and is seeking equitable relief, we hold that the claim arises under ERISA § 503(a)(3) and therefore under federal law.

## B. The *Colorado River* Doctrine

As an alternative holding, the district court declined to exercise jurisdiction under the *Colorado River* doctrine. The court noted that, because there was a pending motion in state court related to this case, it should look to factors such as avoidance of piecemeal litigation, the adequacy of the state court proceeding, and the relative progress of state and federal proceedings to determine whether it should not exercise jurisdiction. The court concluded that all the factors favored dismissal of the claim.

The Committee filed its complaint in this case in federal court on February 12, 1998. On January 21, 1998, in the underlying state personal injury lawsuit, Ms. Gauf had filed a motion to adjudicate and allocate liens. Ms. Gauf did not name the Committee as a party, although she listed the Plan as claiming $9,870.68 as subrogation for medical payments. Ms. Gauf did not serve process on the Committee, but the Committee was aware of the motion.

*Colorado River* provides a two-part test for determining whether a federal district court should abstain from adjudicating a claim when there is a related state court proceeding. First, the two suits must be parallel; they must involve substantially the same parties litigating substantially the same issues. *See Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir.1992). The second part of the *Colorado River* test is a balancing of factors. Only "exceptional circumstances" will justify abstention. *Sverdrup Corp. v. Edwardsville Community Unit Sch. Dist. No. 7*, 125 F.3d 546, 549 (7th Cir.1997). The relevant factors include whether both proceedings involve the same res, the relative inconvenience of the federal forum, the need to avoid piecemeal litigation, the order in which the proceedings were filed, whether state or federal law provides the rule of decision, whether the state action protects the federal plaintiffs' rights, the relative progress of the two proceedings, the presence or absence of concurrent jurisdiction, the availability of removal and the vexatious or contrived nature of the federal claim. *See id.* at 549–50.

The Committee argues that the actions are not parallel because Ms. Gauf did not make it a party to the motion to adjudicate the liens in state court. We agree that the *Colorado River* doctrine is inapplicable. The Committee, which is the *only* plaintiff in this case, is not a party in the state proceeding. Nor is this a case in which the interests of the missing party in the state proceeding (the Committee) are similar to or represented by another party in that proceeding. *See, e.g., Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir.1998); *Caminiti*, 962 F.2d at 700.

We therefore believe that the district court ought to have exercised jurisdiction over this federal claim. The Administrative Committee asserts a right under federal law to reimbursement of its expenditures, and, because it is not a party to the state court action, it has no other forum in which to vindicate its interest. Moreover, it would appear that, if it has the right that it asserts, prompt adjudication of that right is necessary to its meaningful vindication.

### Conclusion

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.

REVERSED and REMANDED.