**MITCHELL ENERGY
& DEVELOPMENT
CORP., Plaintiff,**

v.

**Vada L. FAIN, Lester G. Trollinger,
John F. Wilkins, and Greer H.
Yoes, Defendants.**

**No. CIV.A. H–00–1465.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 15, 2001.

Matthew L. Hoeg, Andrews & Kurth, Mayor, Day, Caldwell & Keeton L.L.P., Houston, TX, for Plaintiff.

W. Fulton Broemer, Broemer & Associates, Houston, TX, Liane A. Janovsky, Law Snakard & Gambill, Ft. Worth, TX, for Defendants.

*FINDINGS OF FACT &
CONCLUSIONS OF
LAW*

HITTNER, District Judge.

Pending before the Court is Plaintiff Mitchell Energy & Development Corporation's Motion for Judgment. Having considered the motion, submissions on file, and applicable law, as well as the parties' arguments at a hearing conducted on October 22, 2001,[1] the Court determines that the motion should be granted in part and denied in part. In so ruling, the Court now enters the following findings of fact and conclusions of law. Any finding of fact that should be construed as a conclusion of law is hereby adopted as such. Any conclusion of law that should be construed as a finding of fact is hereby adopted as such.

## I. FINDINGS OF FACT

Plaintiff Mitchell Energy & Development Corporation ("MEDC") brought the instant suit against four of its former employees: Defendants Vada L. Fain, Lester G. Trollinger, John F. Wilkins, and Greer H. Yoes (collectively, "Defendants"). MEDC alleges that Defendants are liable under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1999), for violating the terms of a voluntary incentive retirement program offered by MEDC and accepted by Defendants.

In December 1998, MEDC anticipated layoffs throughout its organization and initiated a "Voluntary Incentive Retirement Program" ("VIRP").[2] The VIRP defined a

---

1. This matter was presented to the Court by submission with final oral argument by counsel on October 22, 2001.

2. MEDC sponsored and funded the VIRP. In addition, MEDC determined which employees were eligible to participate; calculated the

type, amount, and timing of benefits for which each participant was eligible; received, reviewed and accepted participant elections; calculated the amount and timing of benefits; and paid benefits, in both lump sums and monthly amounts, based upon each participant's eligibility and election.

class of eligible employees and provided for the payment of enhanced benefits to those eligible employees who elected to retire before a stated deadline.[3] MEDC told employees that effective December 15, 1998, it would open a window for VIRP participation for employees age fifty-five and over who had at least ten years of service under the company's retirement plan. The window closed on January 29, 1999. For employees who were eligible and elected to participate in the VIRP, their termination was effective on February 15, 1999.

On January 8, 1999, MEDC conducted a meeting to apprise its employees of upcoming staff reductions. During that meeting, MEDC introduced employees to representatives of the Texas Workforce Commission ("TWC"). The TWC representatives spoke to the employees and stated that employees who were terminated would be eligible for unemployment benefits. MEDC did not ask TWC to address the VIRP arrangement. Instead, TWC was present only to inform employees who were laid off of the availability of unemployment compensation. The unemployment benefit statements were not intended to pertain to employees who were eligible for the VIRP; rather, the statements relating to eligibility for unemployment benefits applied only to the employees who would be laid off who were not eligible to voluntarily retire under the terms of the VIRP. MEDC did not, however, clarify or correct the TWC representatives' statements regarding unemployment benefits by explaining that eligibility for VIRP benefits would negate an employee's eligibility for unemployment benefits.

Each eligible employee under the VIRP, including Defendants, received written notification of eligibility to participate in the VIRP, as well as a copy of the VIRP Plan summary, a VIRP election form, and a VIRP Agreement. Each eligible employee under the VIRP was given forty-five days to consider whether he or she wished to participate in the VIRP and to obtain legal advice regarding the consequences of participating in the VIRP, signing the VIRP election form and executing the VIRP Agreement.

The VIRP Plan summary described the purpose and nature of the VIRP and the VIRP benefits to the eligible employees. It expressly informed each eligible employee that he or she would be required, as a condition to participating in the VIRP, to "[e]xecute the Waiver and Release Agreement in order to participate in the VIRP." The agreement provided that "[t]his agreement releases any claim you may have against the Company in connection with your employment or termination of employment. Please read the Waiver and Release Agreement carefully."

Each eligible employee received a copy of the VIRP election form and the VIRP Agreement that he or she was required to execute as a condition to obtain enhanced benefits under the VIRP. The VIRP Agreement is a one page document that states:

> I understand and agree that if I elect to execute this Agreement, MEDC will be providing additional severance benefits to me that are greater than I would otherwise be eligible to receive (which have been fully explained to me and which I understand) and that these benefits are being paid to me in consideration for my execution of this Agreement. I acknowledge that I received this Agreement on or before the above date and understand that I have forty-five (45) days from this date to review

---

**3.** The types of available benefits included: (a) a severance type payment, (b) a "retirement adjustment" payable, at the employee's elec-

tion, in a lump sum or in an annuity, and (c) a monthly social security supplement payable until the employee's sixty-second birthday.

and consider this Agreement before signing it. I acknowledge that MEDC has advised me to consult with an attorney prior to signing this Agreement. I also understand that I will have seven (7) days after the date this Agreement is signed and accepted in which to revoke it.

I voluntarily, knowingly and irrevocably release MEDC and its parent and affiliates, and each of the foregoing's directors, officers, employees and agents from any claims of any nature, whether now known or later becoming known, relating to my employment or termination of employment with MEDC, and its parent and affiliates including, without limitation, those arising under the Age Discrimination in Employment Act of 1967, as amended, the Workers Adjustment and Retraining Act, and any federal, state, local or common law relating to termination of employment or discrimination in employment on the basis of age, sex, race or otherwise. This waiver and release also applies to any claims brought by any person, or agency or any class actions under which I might otherwise have any right or benefit.

I promise never to file a lawsuit or bring any administrative proceedings asserting any claims that are released under this Agreement and never to accept any recoveries or benefits which may be obtained on my behalf by another person or agency or through any class action lawsuit or similar proceeding. If I break this promise, I will pay all costs incurred by MEDC, its parent and any affiliate, and each of the foregoing's officers, directors, employees or agents including reasonable attorneys' fees, in defending against any claims.

Each of the Defendants voluntarily elected to participate in the VIRP and executed a VIRP Agreement. None of the Defendants subsequently exercised his or her right to revoke the election. After electing to participate in the VIRP and signing a VIRP Agreement, each Defendant ceased employment with MEDC and began receiving enhanced benefits under the VIRP.

Defendant Fain received lump sum payments totaling $34,359.71 and continues to receive a monthly benefit of $1,388.71 per month.[4] Defendant Trollinger received lump sum payments totaling $16,814.89 and continues to receive a monthly benefit of $961.32 per month.[5] Defendant Wilkins received lump sum payments totaling $22,303.68 and continues to receive a VIRP monthly benefit of $1,057.61 per month.[6] Defendant Yoes received lump sum payments totaling $17,388.18 and continues to receive a monthly retirement annuity benefit of $959.07 per month.[7]

Within weeks of electing to participate in the VIRP and executing the VIRP Agreement, Defendants initiated an administrative proceeding against MEDC with the TWC relating to Defendants' employment and the termination thereof. Defendants sought to recover unemployment compensation benefits, arguing that they did not voluntarily retire and that they were entitled to unemployment compensation benefits, with the amount of such benefits to be charged back to MEDC's account with TWC.

Upon notification of the Defendants' filing and pursuit of the unemployment claims, MEDC's General Counsel, Thomas Battle ("Battle"), wrote to Defendants to

---

4. Effective June 30, 2002, the monthly benefit will be reduced to $988.71.

5. Effective September 3, 2003, the monthly benefit will be reduced to $561.32.

6. Effective October 31, 2005, the monthly benefit will be reduced to $657.61.

7. Effective October 31, 2004, the monthly benefit will be reduced to $559.07.

remind them of the terms of the VIRP Agreement. Battle's letter urged each of the Defendants to "refrain from pursuing any claims that constitute a breach of [the VIRP] agreement. Since you have already filed a claim for unemployment compensation benefits, I urge you to advise the TWC that you are withdrawing your claim . . . ."

A number of other VIRP participants who had also filed unemployment compensation claims withdrew or abandoned their claims upon receiving Battle's letter, but the Defendants did not. MEDC thereafter engaged counsel to file a response in opposition to each Defendant's claim in the TWC proceeding and to defend MEDC in the consolidated TWC proceeding. The TWC initially awarded unemployment benefits to Defendants. Ultimately, however, the TWC reversed its ruling and found in favor of MEDC, stating that Defendants had voluntarily retired from employment with MEDC and were not eligible to receive unemployment compensation benefits.

Following receipt of the TWC's final determination, Defendants filed a lawsuit in Travis County, Texas, against both MEDC and TWC. In the Travis County lawsuit, Defendants again claimed that they did not voluntarily retire and that they were entitled to unemployment compensation benefits, with the amount of such benefits to be charged back to MEDC.

MEDC engaged counsel to defend itself in the Travis County lawsuit. Both TWC and MEDC denied the claims asserted by Defendants in the Travis County lawsuit. In April 2000, TWC and MEDC filed jurisdictional pleas seeking the dismissal of that lawsuit. The Travis County district court has not yet ruled upon dismissal.

MEDC requested that Defendants dismiss the Travis County lawsuit, but Defendants have refused to do so. MEDC therefore filed and pursued the instant suit.

Three provisions of the VIRP Agreement are at issue in this case: (1) the provision stating that participants release "any claims of any nature . . . relating to the[ir] employment or termination of employment;" (2) the provision stating that the participant will not "file any lawsuit or bring any administrative proceeding asserting any claims that are released;" and (3) the provision stating that the participant will "pay all costs incurred by MEDC . . . including reasonable attorneys' fees in defending against [any released] claim" that might be filed or brought by the electing participant. MEDC alleges that Defendants improperly obtained benefits after their violation of these provisions, thereby requiring MEDC to engage counsel to defend itself and enforce the VIRP Agreement. In its amended complaint, MEDC seeks the following relief:

 (a) a judicial declaration that:

 (1) the VIRP Agreement is enforceable; and

 (2) Defendants are not entitled to continue receiving enhanced retirement benefits;

 (b) restitution of the enhanced benefits that Defendants obtained by participating in the VIRP;

 (c) enforcement of Defendants' obligations under the VIRP Agreements to reimburse Plaintiff for their attorneys' fees and expenses incurred in the TWC and in the Travis County lawsuit; and

 (d) recovery of attorneys' fees and expenses incurred in pursuing this lawsuit under ERISA.[8]

8. MEDC incurred costs and attorneys' fees totaling $13,095.56 in defending itself in the TWC proceeding. To date, MEDC has in-

curred costs and attorneys' fees totaling

This Court has already determined that the VIRP Agreement is covered by ERISA and is enforceable.[9] In that Order, the Court found that MEDC has standing as an ERISA fiduciary to bring the instant action. The Court also ruled that ERISA preempts the Texas Labor Code to the extent that the Texas Labor Code allegedly renders the VIRP Agreements unenforceable. The Court further determined that MEDC was not entitled to recover attorney's fees for defense of the TWC and Travis County proceedings under 29 U.S.C. § 1132(g)(1).

The Court stands by its prior rulings but will revisit the issues of standing and preemption for elaboration and clarification. The Court will then determine the final issues of whether MEDC is entitled to equitable relief and recovery of attorney's fees in the instant case.[10]

## II. CONCLUSIONS OF LAW

### A. Standing

■ The parties agree that the VIRP at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1999). However, Defendants challenge MEDC's standing to bring the instant action under ERISA. ERISA provides that fiduciaries and beneficiaries may obtain "appropriate equitable relief" when necessary to enforce, or to redress violations of the terms of an ERISA Plan. 29 U.S.C. § 1132(a)(3)(B). Under ERISA, an entity is a fiduciary to the extent that it exercises discretionary authority or control with respect to the management or administration of an ERISA Plan, or with respect to the man-

agement or disposition of ERISA Plan assets. *Id.* § 1002(21)(A); *Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996).

MEDC has exercised, and continues to exercise, discretionary authority and control with respect to management and administration of the VIRP. Among other things, MEDC determined which employees were potentially eligible to participate in the VIRP and informed each eligible employee about the VIRP. MEDC also received the signed VIRP election forms and VIRP Agreements from each electing participant. Thereafter, MEDC determined each electing employee's eligibility to participate in the VIRP and calculated each eligible participant's VIRP benefits. MEDC also funds and pays each participant's VIRP benefits. As a result of its management and administration of the VIRP, MEDC qualifies as a fiduciary with respect to the operation and administration of the VIRP. Accordingly, MEDC has standing to pursue its claims against Defendants pursuant to 29 U.S.C. § 1132(a)(3)(B).

### B. Preemption

■ Defendants assert that the VIRP Agreements violate the Texas Labor Code because they release unemployment compensation claims. Defendants also contend that ERISA does not preempt the Texas Labor Code in this case. Section 207.071 of the Texas Labor Code states that an agreement to waive or release an employee's right to unemployment benefits is not valid. TEX. LABOR CODE ANN.

---

$1,083.12 for the Travis Country lawsuit and $27,300.17 for this lawsuit.

9. *See* Document # 40, entered June 29, 2001.

10. The parties agreed that this case should be summarily resolved by the Court on the basis of submissions, with final oral argument on

October 22, 2001. In the Defendants' joint trial brief, they raised for the first time the affirmative defense of equitable estoppel, citing *Bertram v. NuTone, Inc.,* 107 F.Supp.2d 957 (S.D.Ohio 2000). As this issue was not timely pleaded, the Court will not consider this argument.

§ 207.071 (Vernon 1996). An employer may not require or accept an employee's waiver of a right to receive unemployment benefits. *Id.* § 207.072. An employer's attempt to obtain or enforce a waiver of a right to recover unemployment benefits is punishable by fine and/or imprisonment. *Id.* § 207.074.[11]

■ ERISA preempts any and all state laws to the extent that they "relate to" an ERISA Plan. 29 U.S.C. § 1144(a); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 651, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).[12] ERISA's preemption clause must be read broadly to reach any state law having a connection with or reference to covered employee benefit plans. *Id.* at 655, 115 S.Ct. 1671. A state law may relate to a benefit plan, and therefore be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect. *Id.* If a law has a connection with or reference to a plan, then it relates to an employee benefit

plan. *Id.* at 656, 115 S.Ct. 1671. However, state law will not be preempted if it has only a tenuous, remote or peripheral connection with a covered plan. *Id.* at 661, 115 S.Ct. 1671.

■ The instant dispute centers upon Defendants' waiver and release of employment related claims under the VIRP.[13] Under ERISA, an employer may obtain waivers of employment-related claims as a legitimate benefit of the operation of a benefit plan. *Lockheed Corp.,* 517 U.S. at 893–94, 116 S.Ct. 1783. Plan sponsors can reduce the likelihood of lawsuits by encouraging employees who would otherwise have been laid off to depart voluntarily. *Id.* For example, an employer can promise to pay increased benefits in exchange for the performance of some condition by an employee. *Id.* at 894, 116 S.Ct. 1783.

■ ERISA's preemption clause was designed to protect, inter alia, the right of employers to provide those benefits they choose. *Shaw v. Delta Air Lines,* 463 U.S.

---

11. Such violation is punishable by (1) a fine not less than $100 and not more than $1,000; (2) imprisonment for not more than six months; or (3) both a fine and imprisonment. Tex. Labor Code Ann. § 207.074(1)-(3).

12. ERISA's preemption provision does not apply to "any generally applicable criminal law of a State." 29 U.S.C. § 1144(b)(4). The Texas Labor Code provisions cited above are civil statutes that carry criminal penalties for violation. *See* Tex. Labor Code Ann. § 207.074. Defendants do not argue that the provisions of the Texas Labor Code at issue herein constitute "criminal laws of a state." Moreover, as stated by the district court in *Walker v. CIGNA Insurance Group,* federal courts examining § 1144(b)(4) have found that the provision refers to laws that apply to conduct like larceny and embezzlement. *Walker,* Nos. Civ. A 99–3274, Civ. A 99–3576, 2000 WL 687738, at *2 (E.D.La. May 26, 2000) (citations omitted). "Section 1144(b)(4) exempts state criminal laws from ERISA preemption so the states are not prohibited from prosecuting crimes such as embezzlement committed in relation to an

ERISA plan." *Id.* Here, there is no allegation of embezzlement or larceny in relation to the VIRP. Accordingly, there is no exemption from ERISA's preemption under § 1144(b)(4) in this case. *See id.*

13. MEDC asserts that it is not actually seeking to *enforce any waiver or release* by this lawsuit. Rather, MEDC seeks to *enforce a reimbursement provision* whereby Defendants promised, as part of their election to participate in the VIRP, to reimburse MEDC for all costs and attorneys' fees that MEDC incurred in defending itself against any released claims. MEDC points out that reimbursement arrangements are neither waivers nor releases. MEDC further notes that whereas the Texas Labor Code prohibit certain waivers and releases of unemployment benefit rights, it does not prohibit an employer and employee from entering into a reimbursement arrangement. Notwithstanding these distinctions, the Court is of the opinion that ERISA preempts the Texas Labor Code in this case.

85, 88, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA's preemption clause was also designed to ensure uniformity in the design and administration of covered plans. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9–10, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). If state laws could be applied to invalidate selected or objectionable plan provisions or benefits, employers would be subject to conflicting requirements in the administration of their ERISA plans. *Id.* Indeed, the validity, and, therefore, the design, content, and administration of such plans would vary from state to state. *Id.*

Defendants state that MEDC has violated the Texas Labor Code by enforcing a waiver and release of unemployment benefit claims. Applying the Texas Labor Code in the manner advocated by Defendants, however, would have a substantial effect upon MEDC's ERISA plan. Application of the Texas Labor Code to MEDC's VIRP Agreement would subject MEDC to non-uniform and inconsistent rules depending upon individual state laws and the prohibition of waivers or releases. Moreover, applying the Texas Labor Code in this case would deprive MEDC of its right to determine what benefits to provide and how to structure those benefits. Given these effects upon MEDC's ERISA plan, sections 207.071, 207.072, and 207.074 of the Texas Labor Code "relate to" the ERISA plan at issue herein. Accordingly, the Court determines that ERISA preempts sections 207.071, 207.072, and 207.074 of the Texas Labor Code in this case.

Because the Court has ruled that MEDC has standing to bring the instant action and that the VIRP is valid and enforceable, the Court now turns to MEDC's requests for equitable relief and attorneys' fees.

## C. Relief Sought by MEDC

### 1. Equitable Relief

MEDC seeks three types of equitable relief in this case. First, MEDC seeks a declaration that Defendants are no longer entitled to receive further benefits under the VIRP—i.e., that Defendants are not entitled to receive their monthly annuity payments. Second, MEDC seeks restitution of the lump sum payments made to Defendants. Third, MEDC seeks enforcement (i.e., specific performance) of the VIRP Agreement by requiring Defendants to reimburse MEDC for attorneys' fees and expenses relating to the TWC and Travis County proceedings.[14]

■ Section 1132(a)(3)(B) of ERISA permits MEDC to bring an action to obtain "appropriate equitable relief" to redress violations or enforce provisions of its ERISA plan. *See* § 1132(a)(3)(B); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252–53, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The "equitable relief" available to both fiduciaries and beneficiaries under 29 U.S.C. § 1132(a)(3)(B) is all of the relief that was "typically available in equity." *Mertens*, 508 U.S. at 253, 113 S.Ct. 2063.

The Fifth Circuit has not specifically addressed whether MEDC is entitled to the types of equitable relief it seeks in this case. The most analogous Fifth Circuit case is *Sunbeam–Oster Co. Group Benefits Plan for Salaried & Non–Bargaining*

---

14. The Court previously ruled that MEDC was not entitled to recover attorneys' fees for the TWC and Travis County proceedings pursuant to 29 U.S.C. § 1132(g)(1) using the five factors enumerated in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). *See* Document # 40. Here, MEDC seeks recovery of fees and expenses pursuant to the express terms of the VIRP agreement, not § 1132(g)(1) of ERISA. Accordingly, the *Bowen* factors are not applicable to MEDC's request for reimbursement of attorneys' fees and expenses in this case. Rather, the VIRP Agreement controls.

*Hourly Employees v. Whitehurst,* 102 F.3d 1368 (5th Cir.1996). The facts of the case are as follows. Leonard Whitehurst ("Whitehurst") was a long-time employee of Sunbeam–Oster Company. *Id.* at 1369. Whitehurst was covered by the Sunbeam–Oster group benefits plan ("the plan"), a self-funded welfare benefit plan under ERISA. *Id.* The plan contained subrogation and reimbursement provisions requiring reimbursement to the plan if a participant recovered against a third party. *Id.* at 1370–71.

Whitehurst was severely injured in a motor vehicle accident unrelated to his employment, and the plan paid his resulting medical expenses. *Id.* at 1369–70. Whitehurst ultimately reached a settlement with the third-party tortfeasor. *Id.* at 1370. The plan thereafter sought reimbursement for the medical expenses it had paid on Whitehurst's behalf under the plan's subrogation and reimbursement provisions, but Whitehurst refused to reimburse the plan. *Id.* at 1371–72. The plan filed suit against Whitehurst, seeking, inter alia, reimbursement for the medical benefits that the plan had paid on his behalf. *Id.*

The district court ruled that the plan had no right to reimbursement because Whitehurst had not been "made whole" by the settlement with the tortfeasor. *Id.* The Fifth Circuit reversed the district court's decision, holding that "[w]hen [the Plan] language is read in context and viewed in light of all the circumstances, it can only mean that the Plan is entitled to be paid back by the beneficiary all amounts that the Plan has paid to the beneficiary, or on his behalf, to the full extent—but only to the extent—that the beneficiary recovers from another source ...." *Id.* at 1375–76. The court determined that the "plain language of the Plan's subrogation and reimbursement provisions was clear and unambiguous"

and that these provisions "vested the Plan with an unconditional and unequivocal Plan Priority right to reimbursement for the full amount of the medical benefits it paid on a participant's behalf, from any and all funds that a participant might recover from, inter alia, a third party tortfeasor or his insurer." *Id.* at 1376.

In *Sunbeam–Oster,* the Fifth Circuit was not presented with the question of whether the plan's right to reimbursement was an equitable remedy under ERISA. Rather, the court addressed and enforced the plain language of the ERISA plan at issue. In this regard, *Sunbeam–Oster* is instructive, but does not directly answer the instant question of whether MEDC is entitled to the equitable relief that it seeks in this case. Nevertheless, the relief granted in *Sunbeam–Oster* lends support to MEDC's request for specific performance of the VIRP Agreement—specifically, MEDC's request that Defendants reimburse MEDC for its costs and expenses incurred in defending itself against released claims. *See id.; see also Metra-Health Ins. Co. v. Drake,* 68 F.Supp.2d 752 (E.D.Tex.1999) (holding that participant who recovered from third party tortfeasor was required to reimburse an ERISA plan for expenses the plan paid on the participant's behalf).

Other circuit courts of appeals have addressed the question of availability of equitable relief in § 1132(a)(3)(B) cases. These cases are instructive, but are also not directly on point to the case at bar. Accordingly, a review of these cases is in order.

The Seventh Circuit, in *Administrative Committee v. Gauf,* 188 F.3d 767 (7th Cir. 1999), considered whether a claim by an ERISA plan administrator seeking reimbursement was an equitable claim for relief under ERISA. *Id.* at 769. Patricia Gauf ("Gauf") was employed by Wal–Mart

and was covered under an ERISA plan ("the plan"). *Id.* at 768. The plan was administered by the Administrative Committee ("the Committee"). *Id.* Gauf was injured in an automobile accident and the plan reimbursed Gauf $9,870.68 for her medical treatment. *Id.* Gauf later sued the third-party tortfeasors in state court and collected $36,000 from the defendants' insurers. *Id.* at 768–69. The Committee later filed suit against Gauf to recover the $9,870.68 paid to her as benefits under the plan pursuant to its "Right to Reduction and Reimbursement (Subrogation)" provision. *Id.* at 769.

The district court dismissed the case for lack of subject matter jurisdiction. *Id.* at 768. The Seventh Circuit reversed the district court's determination that it lacked jurisdiction. *Id.* at 772. The court held that the Committee had pursued a cognizable ERISA claim (and, thus, pursued a claim over which the district court could exercise subject matter jurisdiction under 28 U.S.C. § 1331) because the Committee was an ERISA fiduciary and the Committee sought equitable relief under ERISA. *Id.* at 771.

One of the questions addressed by the Seventh Circuit was whether the Committee was requesting equitable relief under ERISA in the form of restitution. *Id.* at 770. The court held that "a fair reading of the [plan] in its totality makes clear that the Committee is seeking an equitable remedy against Ms. Gauf to ensure her compliance with the terms of the Plan. For example, the complaint requests 'specific performance and enforcement' of the contract and an 'order enjoining [Gauf] from continuing to violate the terms of the Plan.' " *Id.* The court noted that the Seventh Circuit had consistently held that a complaint purporting to state a claim for equitable relief under a reimbursement clause in a benefits contract is an equitable claim for purposes of § 1132(a)(3). *Id.* at

771. Therefore, the Committee's request for enforcement of the reimbursement provision was an equitable claim for relief under ERISA. *Id.*

In *Southern Council of Industrial Workers v. Ford*, 83 F.3d 966 (8th Cir. 1996), the Court of Appeals for the Eighth Circuit considered whether the district court could exercise jurisdiction over a claim by an ERISA plan to enforce the terms of a subrogation clause. *Id.* at 967–68. The Southern Council of Industrial Workers and the Southern Council of Industrial Workers Trust Fund ("Southern Council") maintained an employee benefit plan that provided health insurance. *Id.* at 967. The plan contained a subrogation clause providing that Southern Council would be subrogated to the rights of a beneficiary to receive or claim indemnification from a third party. *Id.* at 967–68.

Jacqueline Ford ("Ford") was a beneficiary to the plan. *Id.* After Ford sustained injuries from a fall at a supermarket, the plan paid $39,971.35 in medical benefits on Ford's behalf. *Id.* at 968. Ford filed suit against the supermarket and eventually obtained a settlement of $150,000 from Valley Forge Insurance ("Valley Forge"), the supermarket's insurer. *Id.* Prior to the settlement, Ford and her attorney signed a subrogation agreement providing that they would reimburse the plan from the proceeds of any recovery for Ford's injuries. *Id.* An agent of Valley Forge indicated that it would honor the subrogation agreement. *Id.* Ford and her attorney paid the fund $10,000 in reimbursement for the benefits paid on Ford's behalf. *Id.* Southern Council brought lawsuit against Ford, her attorney and Valley Forge, seeking to recover the balance of the amounts it had paid on Ford's behalf. *Id.*

The district court ruled that there was no cognizable claim under ERISA for

Southern Council's recovery of benefits paid on Ford's behalf. *Id.* The Eighth Circuit reversed, finding that Southern Council alleged an ERISA cause of action under § 1132(a)(3) to obtain equitable relief. *Id.* "Southern Council's allegation that Ford admittedly failed to reimburse it as required by the subrogation clause is a claim that Ford failed to comply with a term of the plan. Southern Council sought specific performance of Ford's obligation under the subrogation clause." *Id.* (citations omitted). Accordingly, the Eighth Circuit held that a lawsuit to require specific performance of the terms of an ERISA plan was a proper ERISA claim under § 1132(a)(3). *Id.*

The Eleventh Circuit, in *Blue Cross & Blue Shield of Alabama v. Weitz,* 913 F.2d 1544 (11th Cir.1990), considered whether an administrator's lawsuit against a physician to recover wrongful payments was a lawsuit for equitable relief under ERISA. *Id.* at 1545. South Central Bell sponsored an ERISA medical expense plan ("the plan") for its employees. *Id.* Blue Cross and Blue Shield of Alabama ("Blue Cross") was the administrator of the plan. *Id.* Dr. Lawrence Weitz ("Weitz") submitted 338 claims to Blue Cross to receive payment for mental care services rendered to South Central Bell employees. *Id.* Weitz received over $176,000 from Blue Cross for these claims. *Id.* Weitz, however, never saw any of the patients; rather, a licensed social worker rendered the services to the employees. *Id.* Because the plan required that a physician render the services, Weitz's payments violated the terms of the ERISA plan. *Id.* at 1546.

Blue Cross filed suit against Weitz, seeking repayment to the plan for all payments made to Weitz in violation of the plan. *Id.* The district court denied Weitz's motion to dismiss for lack of jurisdiction because "an equitable action to recover benefits erroneously paid falls within the clear grant of jurisdiction contained in 29 U.S.C. § 1132(a)(3)." *Id.* On appeal, the Eleventh Circuit stated that the payments to Weitz violated the terms of the plan and affirmed the district court's determination that Blue Cross's lawsuit was one for equitable relief under ERISA. *Id.* at 1547. The Eleventh Circuit thus held that an ERISA administrator's claim for recovery of benefits wrongfully obtained was a claim for equitable relief and that restitution to the administrator was appropriate. *Id.*

The Court of Appeals for the District of Columbia considered whether restitution was an available remedy for an insurer under ERISA in *Heller v. Fortis Benefits Insurance Co.,* 142 F.3d 487 (D.C.Cir. 1998). Andrea Heller ("Heller") injured her back, neck and shoulder while working for McCue Systems, Inc. *Id.* at 490. She applied for disability insurance under her employer's ERISA-covered health benefits plan, which provided insurance through Fortis Benefits Insurance ("Fortis"). *Id.* at 491–92. Fortis approved Heller's disability insurance claim and she received disability insurance benefits from 1986 to 1991. *Id.* at 490. In early 1991, the plan's eligibility standards for disability benefits changed. *Id.* Fortis contacted Heller and informed her that it would review her eligibility. *Id.* Based on its investigation, Fortis determined that Heller was unqualified to receive benefits. *Id.* at 491. Fortis terminated Heller's benefits and demanded repayment of benefits that were not due. *Id.* Heller filed suit against Fortis to recover her benefits, and Fortis counterclaimed for restitution of benefits paid to Heller after January 1991. *Id.*

The district court resolved cross-motions for summary judgment in Fortis's favor and ordered Heller to reimburse Fortis $19,811.00, the amount erroneously paid to Heller after January 1991. *Id.* The D.C. Circuit affirmed, stating that "although ERISA itself does not explicitly provide a

statutory right of restitution, it is clear that Congress intended federal courts to fashion a federal common-law under ERISA, and this permits application of a federal common-law doctrine of unjust enrichment." *Id.* at 495 (citations omitted). The court noted that other federal courts had created an unjust enrichment remedy, permitting ERISA fiduciaries to seek restitution against third parties who wrongfully or mistakenly receive money to which the plan is entitled. *Id.*

The court then reviewed the district court's order of restitution to Fortis under the unjust enrichment doctrine. *Id.* Even though Heller's plan did not specifically provide for restitution, there was evidence that Fortis had notified Heller that it expected reimbursement for benefits for which she was not eligible. *Id.* The district court therefore did not abuse its discretion in ordering Heller to reimburse Fortis. *Id.* Accordingly, reimbursement for wrongfully obtained benefits was a proper remedy under ERISA—even absent express language in the ERISA plan that required reimbursement. *Id.*

The foregoing cases demonstrate that federal courts have allowed fiduciaries un-der § 1132(a)(3) of ERISA to bring a claim reimbursement to enforce the terms of a plan.[15] These courts have ordered enforcement of the terms of an ERISA plan in two ways. First, courts have allowed claims for reimbursement by ordering specific performance of the terms of an ERISA plan. *See Admin. Comm. v. Gauf,* 188 F.3d 767 (7th Cir.1999); *S. Council of Indus. Workers v. Ford,* 83 F.3d 966 (8th Cir.1996); *Blue Cross & Blue Shield of Ala. v. Weitz,* 913 F.2d 1544 (11th Cir. 1990). Second, federal courts have ordered reimbursement through application of the doctrine of unjust enrichment. *See Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487 (D.C.Cir.1998).

▄▄▄ Applying these principles to the instant case, the Court first notes that the reimbursement provision in the VIRP Agreement is clear and unambiguous, requiring the participant to repay MEDC for any attorneys' fees and expenses incurred by MEDC in defense of a released claim. *See Sunbeam–Oster,* 102 F.3d at 1374–76.[16] Second, the Defendants in this case have violated the express terms of the VIRP Agreement by filing employment-related claims against MEDC.[17] *See id.; see also*

---

**15.** *But see FMC Med. Plan v. Owens,* 122 F.3d 1258 (9th Cir.1997) (finding that a claim for reimbursement was not an equitable claim for relief under 29 U.S.C. § 1132(a)(3), rather, the claim was one for money damages that was not cognizable under § 1132(a)(3)).

**16.** The VIRP Agreement requires each Defendant to "pay all costs incurred by MEDC ... including reasonable attorneys' fees in defending against [any released] claim." This language is "plain, clear, and understandable by the average reasonable employee." *See Sunbeam–Oster,* 102 F.3d at 1375.

**17.** Any doubt about whether the VIRP Agreements cover administrative proceedings is dispelled by the fact that the VIRP Agreement provides that Defendants will not "file any lawsuit or bring any administrative proceeding asserting any claims that are released." This provision confirms that the release was intended to, and does, cover both "lawsuits" and "administrative proceedings." Nor is there doubt that Defendants' unemployment compensation claims "relate to [their] employment or termination of employment." Such claims must be, and are, predicated upon the fact that Defendants' employment with MEDC was terminated. The claims asserted by Defendants, in both the TWC proceeding and the Travis County lawsuit, violate the release language contained in their VIRP Agreements. Also, because Defendants' claims fall within the scope of the releases contained in their VIRP Agreements, Defendants have breached the covenant not to sue contained in their VIRP Agreements. The covenant not to sue is tied directly to the release, and literally provides that Defendants will not "file any lawsuit or bring any administrative proceeding asserting any claims that are released."

*So. Council,* 83 F.3d at 969; *Weitz,* 913 F.2d at 1546. Third, in accordance with the federal courts that have found reimbursement to be an equitable remedy under ERISA, the Court determines that MEDC's claim for reimbursement of attorneys' fees and expenses (for defense of the TWC proceeding and Travis County lawsuit) is a claim for equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B). *See, e.g., Gauf,* 188 F.3d at 771; *S. Council,* 83 F.3d at 968; *Weitz,* 913 F.2d at 1547; *see also MetraHealth,* 68 F.Supp.2d at 759. Fourth, the Court determines that relief through enforcement (i.e., specific performance) of the terms of the VIRP Agreement is the appropriate remedy in this case.

Moreover, whereas the conclusion and rationale behind *Heller v. Fortis* lends support to the Court's conclusion, the unjust enrichment doctrine is inapplicable in this case. Here, unlike *Heller,* the ERISA plan contains an express reimbursement provision. Thus, there is no need to apply *Heller's* unjust enrichment analysis. *See Heller,* 142 F.3d at 495 (noting that the defendant's ERISA plan did not provide that restitution was a remedy). Rather, enforcement based on the express language of the VIRP Agreement—i.e., the reimbursement provision—is sufficient under these circumstances. Accordingly, the Court concludes that Defendants should reimburse MEDC for attorneys' fees and costs for its defense of the TWC proceeding and Travis County lawsuit.

MEDC has cited no authority permitting the Court to declare that Defendants are not entitled to their monthly annuity payments or to order Defendants to repay their lump sum payments to MEDC. Instead, the relevant case law provides that strict enforcement of the VIRP Agreement—no more and no less—is the appropriate equitable remedy in these circumstances. Had the VIRP Agreement stated that Defendants would repay their lump sum payments or forego their monthly annuity payments upon violation of the terms of the VIRP Agreement, the Court might be compelled to reach a different conclusion. In this case, however, the VIRP Agreement speaks only to reimbursement for attorneys' fees and expenses for MEDC's defense of released claims. Accordingly, the Court limits MEDC's equitable relief to specific performance of the VIRP Agreement. Given the foregoing, the Court determines that Defendants are jointly and severally liable to MEDC for $14,178.68,[18] plus reasonable and necessary attorneys' fees and expenses incurred in MEDC's continuing defense of the Travis County lawsuit.

### 2. Attorneys' Fees

 Finally, MEDC seeks to recover attorneys' fees and costs incurred in pursuing the instant lawsuit.[19] ERISA expressly authorizes the award of attorneys' fees and costs. 29 U.S.C. § 1132(g)(1). In evaluating a request for attorneys' fees under ERISA, the district court must consider the five *"Bowen"*[20] factors:

(1) the degree of the opposing party's culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter

---

**18.** This amount consists of $13,095.56 for the TWC proceeding and $1,083.12 (to date) for the Travis County lawsuit.

**19.** To date, MEDC's attorneys' fees and costs for this lawsuit total $27,300.17.

**20.** *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980).

other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*E.g., Riley v. Admin. of the SuperSaver 401K Capital Accumulation Plan,* 209 F.3d 780, 781–82 (5th Cir.2000) (citing *Bowen*). No one factor is dispositive. *Id.* (holding that the district court abused its discretion by considering only one of the *Bowen* factors).

### 3. Culpability or Bad Faith

The first *Bowen* factor weighs in favor of an award of fees. At the January 8, 1999 meeting, TWC spoke to MEDC employees about the availability of unemployment compensation. As discussed *supra,* however, these statements did not relate to individuals who were eligible to obtain enhanced benefits under the VIRP; moreover, TWC ultimately determined that Defendants were not entitled to unemployment benefits. In addition, after Defendants' initiation of the TWC proceedings, MEDC's general counsel sent letters to Defendants asking them to withdraw their unemployment claims and to adhere to the terms of the VIRP Agreement. MEDC thus made significant efforts to inform Defendants of the consequences of their violations of the VIRP Agreement to no avail. Accordingly, the Court determines that the first *Bowen* factor weighs in favor of awarding MEDC's attorneys' fees in this case.

### 4. Ability of Defendants to Satisfy Award

The second *Bowen* factor may weigh against an award of fees. While employed at MEDC, Defendants were mid-level employees. Further, MEDC has not submitted evidence regarding Defendants' ability to satisfy an award of attorneys' fees.

### 5. Deterrent Effect

The third *Bowen* factor weighs in favor of an award of fees. MEDC's success in the instant lawsuit will likely have a deterrent effect upon other persons who act under similar circumstances in the future. Specifically, this lawsuit may deter other MEDC employees from filing administrative claims and lawsuits in the face of express waivers and releases (and promises to reimburse attorneys' fees and expenses) contained in VIRP Agreements.

### 6. Benefit to All Participants / Significant Question Regarding ERISA

The fourth *Bowen* factor weighs in favor of an award of fees. This case raises several important questions regarding ERISA. First, the viability and enforceability of releases, waivers, and reimbursement provisions included in employment agreements are significant issues under ERISA. As the Supreme Court noted in *Lockheed Corp. v. Spink,* the practice of obtaining waivers of employment-related claims in exchange for enhanced benefits under an ERISA plan serves a legitimate purpose in the relationship between employers and employees. *See Lockheed Corp.,* 517 U.S. at 893–94, 116 S.Ct. 1783. Employees who might otherwise be terminated without receiving any enhanced benefits are allowed to retire with enhanced benefits because employers can obtain releases and waivers. If releases, waivers, and reimbursement provisions contained in VIRP-type arrangements cannot be enforced, then employers like MEDC would lose their primary incentive for providing enhanced benefits to employees in similar circumstances.

MEDC's action also benefits other VIRP participants. Defendants were not forced

to elect to participate in the VIRP, but once they made that election, they cast their lot with the other eligible employees who elected to participate in the VIRP. By collecting VIRP benefits without abiding by their VIRP Agreements, Defendants have attempted to obtain greater benefits than those participants who have adhered to the terms of their VIRP Agreements.

### 7. Relative Merits of the Parties' Positions

The fifth *Bowen* factor weighs in favor of an award of attorneys' fees to MEDC. Although Defendants have raised arguments regarding MEDC's standing as an ERISA fiduciary as well as ERISA's preemption of state law, the merits of the case weigh in favor of MEDC's position. Perhaps most importantly, the VIRP Agreement provided, in plain and unambiguous terms, that Defendants could not bring an administrative action or lawsuit against MEDC. Despite this clear provision, Defendants went forward with the TWC proceeding and Travis County lawsuit, in direct contravention of the language in the VIRP.

In this case, the totality of the *Bowen* factors weighs in favor of an award of attorneys' fees to MEDC. Accordingly, MEDC is entitled to $27,300.17 in attorneys' fees, plus reasonable and necessary attorneys' fees incurred in the future, for MEDC's prosecution of the instant case under 29 U.S.C. § 1132(g)(1).

### III. CONCLUSION

Given the foregoing, the Court hereby

ORDERS that Plaintiff Mitchell Energy & Development Corporation's Motion for Judgment is GRANTED IN PART and DENIED IN PART. Defendants Vada L. Fain, Lester G. Trollinger, John F. Wilkins, and Greer H. Yoes are jointly and severally liable to Mitchell Energy Development Corporation for attorneys' fees and expenses in the amount of $13,095.56 for Mitchell Energy Development Corporation's defense of the Texas Workforce Commission proceeding. The Court further

ORDERS that Defendants Vada L. Fain, Lester G. Trollinger, John F. Wilkins, and Greer H. Yoes are jointly and severally liable to Mitchell Energy Development Corporation in the amount of $1,083.12, plus reasonable and necessary attorneys' fees and expenses incurred in the future, for Mitchell Energy Development Corporation's defense of the lawsuit styled *Vada L. Fain, Lester G. Trollinger, John F. Wilkins, and Greer H. Yoes v. Texas Workforce Commission and Mitchell Energy Corporation,* currently pending before the 53rd Judicial District Court, Travis County, Texas. The Court further

ORDERS that Defendants Vada L. Fain, Lester G. Trollinger, John F. Wilkins, and Greer H. Yoes are jointly and severally liable to Mitchell Energy Development Corporation in the amount of $27,300.17, plus reasonable and necessary attorneys' fees and expenses incurred in the future, for Mitchell Energy Development Corporation's prosecution of the instant lawsuit.

All relief not expressly granted herein is DENIED.